Lytle v. Turner.

JOHN LYTLE et al. v. ROBERT J. TURNER et al.

VENDOR AND VENDEE. *Assignee. Notice. Bona fide purchaser.* A subvendee of land with notice that his vendor holds under a bond for title, and that one of the purchase notes mentioned in the bond is not paid, although he take a deed of conveyance from the original vendor and vendee, is not such a *bona fide* purchaser for value and without notice as will be protected from the claim of an assignee of the note by assignment made before his purchase.

FROM RUTHERFORD.

Appeal from the Chancery Court at Murfreesboro. JNO. W. BURTON, Ch.

E. D. HANCOCK for complainants.

R. BEARD and J. L. CANNON for defendants.

COOPER, J., delivered the opinion of the court.

Bill by the assignees of a purchaser's note for land against the purchaser and a sub-vendee of a part of the land for the enforcement of the vendor's lien. The

41—VOL. 12.

chancellor granted the relief sought, and the Referees
report in favor of affirming the decree.

On January 1, 1874, Thomas J. Turner sold to
his son, Robert J. Turner, a tract of land containing
350 acres, for $18,000, and executed to him a bond
for title. The purchase money was secured by the two
notes of the purchaser, one for $10,000 at one day,
and the other for $8,000 at five years. The vendor's
bond for title described these notes, and was duly reg-
istered on March 23, 1874. On the same day, the
vendor assigned and delivered the note for $10,000 to
the complainant, John Lytle, to secure him, as the
surety of the said Thomas J. Turner on certain debts
specified in the written assignment attached to the note.
On June 1, 1875, Thomas J. Turner made a second
assignment of the note to secure the complainants,
John Lytle and Robert B. Jetton, as his surety on
other debts specified in the assignment, one of them a
note executed to R. T. Tompkins for $5,000, on the
same day, and as part of the transaction of suretyship.

On October 31, 1877, Robert J. Turner sold 100
acres of the land to the defendant, W. W. Mooney,
for $3,000, and he and Thomas J. Turner, with their
wives, joined in a deed on the same day conveying the
land to Mooney with the usual covenants. This deed
was written by Mooney himself, and describes the land
as being "a part of 350 acres sold by Thomas J.
Turner to said Robert J. Turner, and conveyed by
title bond, and not otherwise, which bond is of record
in the register's office of Rutherford county, Tennessee,
in book W, page 82, of date January 1, 1874, to

which reference is here made." Of the purchase money, $1,000 were paid in cash, and the residue during the next month, except about $200 which remained unpaid when the bill was filed on the 27th of July, 1878. Thomas J. Turner died early in January, 1878. At the time of his purchase, Mooney admits that he knew that his vendor, Robert J. Turner, had not paid the whole of the purchase money due from him to his father for the land, both father and son having so informed him. He further says that Thomas J. Turner told him that one of the notes given to him by his son for the purchase money had been delivered up to the son, and the other, he said, was "in my control." Mooney seems to have made no further inquiry. The $8,000 note was surrendered to the son.

A vendor of land who retains the legal title is on the footing of a mortgagee who has taken a mortgage as security for the purchase money, and his security cannot be defeated by any thing short of what would be sufficient to defeat or extinguish the security of a mortgagee, and in such case the operation of a waiver of the lien, which applies to a vendor who conveys without reservation, cannot arise: *Anthony* v. *Smith*, 9 Hum., 508. The assignee of a debt becomes assignee of the security for its payment, and therefore the assignment of a note for the purchase money of land secured by a reservation of the title, draws after it the security: *Graham* v. *McCampbell*, Meigs, 55; *Wood* v. *Neely*, 7 Baxt., 586. A purchaser of land is chargeable with notice of all defects appearing in the chain of title under which he claims, and cannot to the ex-

tent of the notice avail himself of the plea of an innocent purchaser: *Pulliam* v. *Wilkerson*, 7 Baxt., 611. And if a purchaser's deed refer to a title bond which shows the retention of title to secure purchase money due to a vendee by a sub-vendee, the purchaser cannot, by taking a deed from the original vendor and the sub-vendee, deprive the original vendee of his lien for purchase money due to him from the sub-vendee: *Payne* v. *Abercrombie*, 10 Heis., 161. And so if the purchaser have knowledge of outstanding purchase notes: *Dishmore* v. *Jones*, 1 Cold., 555. If the maker of a negotiable security pay the amount called for to the payee after the note has been assigned, even as collateral security and after maturity, he will be still liable to the assignee: *Richardson* v. *Rice*, 9 Baxt., 290.

The defendant, Mooney, made his purchase under the belief, no doubt, that he was acquiring a good title, but, as between him and the complainants, the assignees of the Robert J. Turner note, it is clear from the foregoing principles, that he was not a *bona fide* purchaser for value, and without notice. On the contrary, he had full notice that the note was not paid, and that it was a lien upon the land. If, under these circumstances, he chose to trust the Turners without further inquiry, it was his misfortune. It was his duty, as between him and the assignees, to ascertain the status of the note, especially as the words of Thomas J. Turner fairly implied that he did not have the possession, but only "the control" of the note. The defendant's counsel contends that the assignees consented to the sale. The defendant's answer does say

that Lytle gave his consent that the money should go to Thomas J. Turner, and that Jetton knew of the sale before it was made.   But the proof fails to sustain either averment.   The statements of Turner in their absence were, of course, not evidence against them. And there is no evidence whatever to show that either ever consented to an unconditional surrender of his rights, even if the assent of both would have affected the claims of the holders of the notes secured by the assignment.

Affirm the chancellor's decree with costs, in accordance with the report of the Referees.