### In re DON WILLIAMS CONSTRUCTION COMPANY, INC., Debtor.

#### Bankruptcy No. 91–13102.

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 13, 1992.

Jerry Farinash of Kennedy, Fulton & Koontz, Chattanooga, Tenn., for plaintiff.

Thomas S. Kale & F. Scott LeRoy of Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Now before the court is the bankruptcy trustee's motion to confirm the sale of real property and the objection by Ted C. Moss with respect to lot 202, River Run Golf &

Country Club. The trustee and Mr. Moss have agreed that time is of the essence and the court can decide the issues without formal pleadings under §§ 365 and 544 of the Bankruptcy Code. 11 U.S.C.A. §§ 365 & 544 (West 1979 & Supp.1992).

The court finds the facts as follows.

Don Williams Construction Company, Inc., owned several adjoining tracts of land commonly referred to as River Run Golf & Country Club. The land is located in Hamilton County, Tennessee.

Don Williams Construction sought a loan from a local bank but was turned down. Through a contact at National Title Insurance Agency, Inc., Mr. Moss learned that Don Williams Construction needed financing to complete portions of River Run. Mr. Moss agreed to lend Don Williams Construction $1,200,000 secured by a mortgage on part of the River Run property. Mr. Moss understood that the money would be used to complete the roads, utilities, and golf course at River Run.

Since Don Williams Construction was in a financial bind, the loan needed to be closed quickly. Mr. Moss contacted attorney Richard D. Crotteau about doing the legal work to complete the deal. Mr. Crotteau testified that Mr. Moss wanted the deal closed in a day or so. Mr. Crotteau told Mr. Moss that he could not do all the paperwork that quickly for such a large transaction. Mr. Moss and Mr. Crotteau contacted National Title Insurance Agency, Inc., about helping with the paperwork. They agreed that Mr. Crotteau would prepare the loan commitment letter, the most complex of the documents to be prepared. National Title Insurance agreed to prepare a promissory note and deed of trust (the mortgage).

The loan commitment letter provides:

COMMITMENT FEE: In consideration of the issuance of this commitment and of my agreement to make the proceeds available to Borrower in accordance with the terms hereof and of subsequent agreements, you agree to deed to me, upon my request after the plat is filed, Lot # 148 as presently shown on the preliminary plat attached.

Attached to the loan commitment letter is a preliminary drawing of a plat for some of the undeveloped property at River Run. When the property was eventually platted, lot 148 became lot 202.

There was testimony that when the loan commitment letter was drafted, Mr. Moss was given a choice of commitment fees, either $100,000 cash or the promise to convey a lot of his choice. This testimony is not admissible to vary the terms of the loan commitment letter but is admissible as background information.

Mr. Moss chose a promise to convey lot 202 after it was properly platted. Mr. Moss testified that he was not in the business of making loans and would not have made the loan if he had not received a commitment fee of either $100,000 or the lot of his choice.

The mortgage provides that "this conveyance is made in trust for the following purpose and not otherwise", and then goes on to recite the promissory note. It does not mention the loan commitment letter. The promissory note did not say anything about the promise to transfer lot 202 to Mr. Moss.

The loan commitment letter, the promissory note, and the mortgage were executed on June 30, 1989. The mortgage was recorded in the registry of deeds for Hamilton County, Tennessee. The loan commitment letter was not recorded.

Later, Mr. Moss and Don Williams Construction executed an addendum to the promissory note to provide for 5% late payment fees. The addendum is not dated. The addendum says that Don Williams Construction agreed to the late fees in return for an extension of time to make payments on the note and for other good and valuable consideration.

Don Williams Construction had continuing problems making the note payments on time. On the eve of foreclosure, Don Williams Construction filed a Chapter 11 bankruptcy case, which stopped the foreclosure. The Chapter 11 was filed on July 3, 1991.

From then until October 25, 1991, Don Williams Construction continued in control of its own business as debtor-in-possession. Mr. Moss had filed a motion for appointment of a bankruptcy trustee, and on October 25, 1991, attorney Jerry Farinash was appointed trustee. The trustee successfully platted the River Run property, and on May 23, 1992, he held an auction of the property. Lot 202 sold for $52,000.

Mr. Moss called William D. Jones as an expert witness in the real estate and title insurance business. Mr. Jones is an attorney. He is also a principal in Pioneer Title Agency, Inc. Pioneer Title Agency primarily sells title insurance and acts as the closing agent for real estate deals. Mr. Jones prepares legal documents for closings performed by Pioneer Title Agency.

If he were selling title insurance or closing the sale of any of the land subject to Mr. Moss's deed of trust, Mr. Jones would have called Mr. Moss to find out the amount of the debt and the amount of the lot release fees if any. The deed of trust does not include an agreement on lot release fees. Both Mr. Jones and Mr. Crotteau testified that if someone were buying a single lot, he would have to inquire of Mr. Moss as to the exact terms of the loan agreement.

On cross-examination Mr. Jones testified that Pioneer Title Agency prepares what is known as a property report. A property report is a report on the title to a particular tract of land. Preparing a title report requires a review of the recorded documents of title. The property report points out any inconsistencies in the recorded documents. If Mr. Jones were not selling title insurance or closing a sale of land subject to Mr. Moss's deed of trust, the recorded documents of title would not have given him any reason to inquire of Mr. Moss concerning the title to the property. If Mr. Jones were preparing a property report, he would not call Mr. Moss.

## DISCUSSION

Bankruptcy Code § 544(a) gives the bankruptcy trustee various rights in the property of Don Williams Construction

Company. 11 U.S.C.A. § 544(a) (West Supp.1992).[1]

First, it gives the trustee the rights of a creditor with a perfected judgment lien on the property of Don Williams Construction. 11 U.S.C.A. § 544(a)(1) & (2) & § 101(36) (West Supp.1992) (definition of judicial lien).

Second, it gives the trustee the rights of a bona fide purchaser of real property from Don Williams Construction. 11 U.S.C.A. § 544(a)(3) (West Supp.1992).

The trustee is treated as if he became a creditor and perfected the judgment lien at the moment Don Williams Construction filed its bankruptcy case. The trustee is treated as if he became a bona fide purchaser of the real property and perfected the transfer to him at the moment Don Williams Construction filed its bankruptcy case. 11 U.S.C.A. § 301 (West 1979) (commencement of case).

The trustee's rights as a judgment lien creditor and a bona fide purchaser are not affected by his own knowledge or the knowledge of any creditor regarding the property of Don Williams Construction. 11 U.S.C.A. § 544(a) (West Supp.1992).

The promise to transfer the lot to Mr. Moss is contained in the loan commitment letter. The loan commitment letter is an instrument that could have been recorded under Tennessee law to give notice of the promise to transfer the lot to Mr. Moss.

TENN.CODE ANN. § 66–24–101(a)(1) (1982 & Supp.1991). However, the loan commitment letter was not recorded in the registry of deeds. This opens the way for the trustee's arguments that he is entitled to Lot 202 ahead of Mr. Moss.

■ The trustee has two arguments based on Tennessee law and Bankruptcy Code § 544(a).

The first argument goes as follows. Under Tennessee law, the unrecorded promise to transfer the lot cannot be enforced against creditors of Don Williams Construction. TENN.CODE ANN. §§ 66–26–101 & 66–26–103 (1982).[2] Bankruptcy Code § 544(a) gives the trustee the rights of a person who became a creditor of Don Williams Construction and perfected a judgment lien on the lot at the moment Don Williams Construction filed its bankruptcy case. The unrecorded promise to transfer the lot to Mr. Moss cannot be enforced against the trustee as a creditor with a judgment lien on the lot. As a result, the trustee is entitled to the lot or the proceeds from its sale ahead of Mr. Moss's claim under the loan commitment letter.

The second argument is similar. Tennessee law provides that the unrecorded promise to transfer the lot cannot be enforced against a later bona fide purchaser of the lot from Don Williams Construction. TENN.

---

1. (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against

whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of commencement of the case, whether or not such a purchaser exists.

2. Section 66–26–101 provides:

All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registrations on the books of the register, unless otherwise expressly provided.

Section 66–26–103 provides:

Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

CODE ANN. § 66–26–103 (1982). Bankruptcy Code § 544(a) gives the trustee the rights of a later bona fide purchaser of the lot. This means that the trustee is entitled to the lot or the sale proceeds ahead of Mr. Moss's claim under the loan commitment letter.

Mr. Moss relies on the rule of inquiry notice. Mr. Moss argues that a potential buyer of lot 202 would end up having to question him, and he would reveal the promise to transfer the lot to him.

■ Unfortunately for Mr. Moss, he loses even if this argument is correct. A debtor's unrecorded contract to transfer land is not effective against a judgment lien creditor of the debtor, even if the creditor knew of the contract before obtaining its judgment lien. TENN. CODE ANN. §§ 66–26–101 & 66–26–103 (1982). This has long been the rule under the Tennessee statutes. *Moore v. Walker*, 178 Tenn. 218, 156 S.W.2d 439 (1941); *McCoy v. Hight*, 162 Tenn. 507, 39 S.W.2d 271 (1931); *Birdwell v. Cain*, 41 Tenn. 310 (1860); *Malone v. Brown*, 46 S.W. 1004 (Tenn.Ch.App.1897).

Likewise, inquiry notice does not prevent a judgment lien creditor from prevailing over the unrecorded transfer. Inquiry notice is relevant only to the rights of a bona fide purchaser, and even then, only when there has been no actual recording of the transfer. *Still v. Security Federal Savings & Loan Ass'n (In re Hill)*, 71 B.R. 252 (Bankr.E.D.Tenn.1986).

The district court's decision in *Lancaster v. Key* obviously does not apply to the facts of this case. *Lancaster v. Key*, 24 B.R. 897 (E.D.Tenn.1982). In that case the debtors, before their bankruptcy, had conveyed all their interest in the land to the Keys. When Don Williams Construction filed its bankruptcy case, Mr. Moss had only the promise to convey the lot after the land was platted, and the land had not been platted.

The court concludes that the trustee prevails under Bankruptcy Code § 544(a)(1) & (2). The trustee's rights in lot 202 as a judgment lien creditor of Don Williams Construction are superior to Mr. Moss's rights under the unrecorded promise to transfer lot 202.

■ In the alternative, the court concludes that the trustee prevails under his rights as a bona fide purchaser of the land from Don Williams Construction.

■ The rights of a bona fide purchaser are determined by state law. *Robertson v. Peters (In re Weisman)*, 131 B.R. 148 (N.D.Calif.1991). Under Tennessee law, a bona fide purchaser will take free of a prior unrecorded deed or contract only if the bona fide purchaser did not have notice of it. TENN. CODE ANN. § 66–26–103 (1982). Notice includes inquiry notice. *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41 (1950).

The bankruptcy trustee is not bound by his own personal knowledge or a creditor's knowledge of a prior unrecorded contract or transfer by the debtor. 11 U.S.C.A. § 544(a)(3) (West Supp.1992). However, the trustee is treated as having notice if, under Tennessee law, the facts would put a purchaser on notice. *Robertson v. Peters (In re Weisman)*, 131 B.R. 148 (N.D.Calif.1991).

Mr. Moss's argument is simple. The court can assume that the recorded mortgage did not give inquiry notice of Mr. Moss's claim to lot 202. However, the duty to inquire need not be based on the recorded documents. Facts outside the recorded documents may impose on the potential buyer the duty to inquire. *Haywood v. Ensley*, 27 Tenn. 459 (1847); *Williams v. Title Guaranty & Trust Co.*, 31 Tenn.App. 128, 212 S.W.2d 897 (1948). As a practical matter, anyone who wanted to buy just a part of the land, such as lot 202, would find Mr. Moss's recorded mortgage on all the land. The recorded mortgage does not provide for partial releases. Thus, the potential buyer would have to contact Mr. Moss to find out the amount due on the mortgage debt or the amount needed to obtain a release of part of the land. Mr. Moss would give the potential buyer notice of his claim to lot 202, and that would prevent the potential buyer from acquiring lot 202 free of Mr. Moss's claim.

The trustee argues that this practical problem makes no difference. The recorded documents show good title in Don Williams Construction free of any claim to lot 202 other than Mr. Moss's recorded mortgage. Don Williams Construction could have sold lot 202 or a part of the land containing lot 202 subject to Mr. Moss's mortgage. The buyer would be a bona fide purchaser with notice of Mr. Moss's mortgage. *See, e.g., Hahn v. Eckel,* 154 Tenn. 444, 289 S.W. 496 (1927); *Lytle v. Turner,* 80 Tenn. 641 (1883); *Gookin v. Graham,* 24 Tenn. 480 (1844). However, the buyer would be a bona fide purchaser without notice of Mr. Moss's claim to lot 202, unless the buyer had inquiry notice. The buyer would not have inquiry notice. Nothing in the recorded mortgage would cause the buyer to inquire. The promise to transfer lot 202 to Mr. Moss is not the kind of promise that a potential buyer would necessarily expect in the transaction revealed by the recorded mortgage. The mortgage does not contain a due on sale clause. The buyer might be concerned with the amount due on the mortgage debt, but he would not necessarily check with Mr. Moss to find out the total pay-off. *Lytle v. Turner,* 80 Tenn. 641 (1883). The buyer would not be interested in release fees, since he would not be seeking a release from the mortgage. In summary, the facts would not give the buyer inquiry notice of Mr. Moss's claim to lot 202, and as a result, the buyer's rights would be subject to the mortgage but superior to the unrecorded promise to transfer lot 202.

The court agrees with the trustee's argument. The recorded mortgage does not give record notice of Mr. Moss's claim to lot 202. The recorded mortgage by itself does not give inquiry notice of Mr. Moss's claim to lot 202. The recorded mortgage and the surrounding facts together do not give inquiry notice. Thus, a bona fide purchaser of lot 202 would not have notice of Mr. Moss's unrecorded claim.

The court concludes that the trustee's rights as a bona fide purchaser have priority over Mr. Moss's claim to lot 202. If the court is wrong on this point, the trustee still prevails under his rights as a judgment lien creditor.

Of course, it makes no difference to this outcome that there was no lot 148 or lot 202 on the date of bankruptcy. The trustee's rights apply to the land that eventually became identified as lot 202 without regard to whether it had been platted as lot 202 on the date of bankruptcy.

The trustee has also argued that the promise to transfer lot 202 is an executory contract, that he can reject the executory contract, and that Mr. Moss would not be entitled to a lien on the lot for the purchase price already paid.

In light of the court's decision under § 544, the court will not address the questions raised by this argument.

This memorandum is the court's findings of fact and conclusions of law. *Fed. R.Bankr.Proc.* 7052 (West 1984).

## ORDER

In accordance with the court's memorandum opinion entered this date, the court grants judgment to the bankruptcy trustee, Jerry Farinash, on his claim to avoid the debtor's obligation to convey Lot Number 202, River Run Golf & Country Club, to Ted C. Moss. In particular, the court holds that the trustee may avoid the debtor's obligation to transfer Lot Number 202, River Run Golf & Country Club, in his status as a judgment lien creditor pursuant to 11 U.S.C. § 544(a)(1) and his status as a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3). The trustee is entitled to retain the proceeds from the sale of the lot free of any claim by Ted C. Moss.