In re DUNES HOTEL ASSOCIATES, a South Carolina general partnership, Debtor.

DUNES HOTEL ASSOCIATES, a South Carolina general partnership, in its capacity as the Debtor-in-Possession representative of its estate, Plaintiff,

v.

HYATT CORPORATION, a Delaware corporation and S.C. Hyatt Corporation, a South Carolina corporation, Defendants.

Bankruptcy No. 94–75715.
Adv. No. 95–8042.

United States Bankruptcy Court,
D. South Carolina.

Aug. 25, 1995.

Julio E. Mendoza, Jr., Columbia, SC, John J. Dawson, Phoenix, AZ, for Plaintiff.

Claude D. Montgomery, New York City, Michael M. Beal, Columbia, SC, for Defendants.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER came before the Court pursuant to the Motion of SC Hyatt Corporation and Hyatt Corporation ("Hyatt") to Dismiss the Complaint of Plaintiff Dunes Hotel Associates, or, in the Alternative, to Stay the Second Claim and Compel Its Arbitration ("Hyatt Motion") and the Motion for Partial Summary Judgment against the Defendants with Respect to the First Claim for Relief of the Complaint ("Dunes Motion"), filed by Dunes Hotel Associates ("Dunes" or "Debt-

or" or "Debtor-in-Possession"). Hyatt filed a timely objection to the Dunes Motion and Dunes filed a timely objection to the Hyatt Motion.

In the Hyatt Motion, Hyatt asks the Court to dismiss the Complaint filed by Dunes in this adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for failure to state a claim against Hyatt upon which relief can be granted. In the alternative, Hyatt asks the Court to stay the Second Claim for Relief of the Complaint and compel its arbitration. As will be developed further in the Conclusions of Law, the Court will treat the Hyatt Motion as a Motion for Summary Judgment.

In its Motion, Dunes objects to the relief requested in the Hyatt Motion, and asks the Court to enter an order granting summary judgment against Hyatt with respect to the First Claim for Relief of the Complaint pursuant to Federal Rules of Civil Procedure 54(b) and 56, as incorporated by Rules 7054 and 7056 of the Federal Rules of Bankruptcy Procedure.

On June 1, 1995, the Court held a hearing regarding both Motions. As a result of the pleadings filed with the Court, the arguments presented by counsel for the respective parties, and the entire record before the Court, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff Dunes is a South Carolina general partnership formed in 1972 and located in Stamford, Connecticut.

2. The general partners of Dunes are Andrick Hotel Corporation ("Andrick"), a Delaware corporation located in Stamford Connecticut, and Meyers Enterprises, Inc. ("Meyers"), also located in Stamford, Connecticut.

3. The stock of Andrick and of Meyers is wholly owned by an affiliate of the General Electric Pension Trust ("GEPT"), a common law trust organized under the laws of New York which manages and

controls an asset portfolio of approximately 30 billion dollars.[1]

4. On November 18, 1994, Dunes filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

5. At all times since the filing of the Dunes' Chapter 11 case, Dunes has been, and remains, the Debtor-in-Possession.

6. Dunes is the title owner of the real property, improvements, and other property which is comprised of the 505 room destination resort/convention hotel located on Hilton Head Island in Beaufort County, South Carolina, commonly known as the Hyatt Regency Hilton Head or the Hyatt on Hilton Head Island (the "Hotel Property").

7. The stipulated value of the Hotel Property is at least $52,500,000.[2]

8. In 1986, Dunes executed a promissory note ("Promissory Note") and other loan documents with Aetna Life Insurance Company ("Aetna") in order to evidence and secure a loan. The original principal amount of the Promissory Note was $50,000,000.

9. As security for the Promissory Note, Dunes delivered to Aetna several documents creating liens on property of Dunes including but not limited to:

a. Mortgage and Assignment of Rents and Security Agreement, dated June 13, 1986 ("Mortgage"), executed by the Debtor and delivered to Aetna and recorded in Book 368, Page 1110 of the Office of the Register of Mesne Conveyances for Beaufort County, South Carolina ("RMC Office"), which Mortgage grants to Aetna a first-priority mortgage lien on and security interest in, *inter alia*, the real and personal property comprising the Hotel Property and assigns to Aetna all of the Debtor's right, title and interest in and to all present and future leases and subleases affecting the Hotel Property and all present and future rents, issues, profits, income and proceeds from the Hotel Property;

b. An Assignment of Rents and Leases, dated June 13, 1986 ("Assignment of Rents"), executed by the Debtor, as assignor, in favor of Aetna and recorded in Book LB 17, Page 667 of the RMC Office, which assigns to Aetna, *inter alia*, all of the Debtor's right, title and interest in and to all present and future leases and subleases affecting the Hotel Property and all present and future rents, issues, profits, income and proceeds from the Hotel Property;

c. An Assignment of Lease, dated June 13, 1986 ("Assignment of Lease"), executed by the Debtor, as assignor, in favor of Aetna and recorded in Book LB 17, Page 660 of the RMC Office, which assigns to Aetna, *inter alia*, all of the Debtor's rights, interest and privileges under the Agreement and Lease upon default by Dunes on the Promissory Note. The Assignment of Lease identifies the lessor-lessee relationship between Hyatt and Dunes and attaches a description of the Hotel Property which is subject to the Agreement and Lease.

10. Aetna asserts that Dunes is indebted to Aetna in the approximate principal amount of $49,000,000 pursuant to a matured non-recourse loan agreement between Dunes and Aetna ("Aetna Claim"), secured by the Hotel Property and revenues thereof.[3] Dunes has stipulated that Aetna's claim is fully secured.[4]

11. Hyatt and Dunes are parties to a prepetition written agreement relating to the Hotel Property ("SC Hyatt Agree-

---

1. See Debtor's Disclosure Statement at p. 86.

2. Aetna asserts the value to be $53 million.

3. As of August 18, 1995, Aetna takes the position that it is a fully secured creditor with an indebtedness of approximately 50 million dollars, secured by the Hotel Property with a value of 53 million dollars and revenues generated there-from in a Sequestered Account with an approximate balance of 3 million dollars for an approximate total value of 56 million dollars. (See Aetna's Second Motion for Dismissal or Relief from Stay).

4. See Debtor's Disclosure Statement, p. 29, 48.

ment"). The documents which comprise the SC Hyatt Agreement are more fully described in a subsequent Finding of Fact.

12. The term of the claimed lease of the Hotel Property under the SC Hyatt Agreement is for thirty (30) fiscal years from December 31, 1976 (i.e., until December 31, 2006), plus an additional ten (10) fiscal years (i.e., until December 31, 2016) if Hyatt elects to extend the alleged lease term.

13. SC Hyatt is a South Carolina corporation, and is a wholly owned affiliate of Hyatt Corporation, a Delaware corporation. Hyatt Corporation was the original contracting party with Dunes under the SC Hyatt Agreement. Hyatt Corporation subsequently assigned its rights under the initial Agreement and Lease to SC Hyatt which assignment the Debtor acknowledged pursuant to an amendment to the Agreement and Lease, dated January 19, 1976.

14. SC Hyatt currently operates the Hotel Property under the SC Hyatt Agreement.

15. The SC Hyatt Agreement is comprised of the following five (5) documents:

a. The Agreement and Lease dated November 2, 1973, by and between Dunes Hotel Associates and Hyatt Corporation ("Agreement and Lease" or "Agreement" or "Lease");

b. The First Amendment to Agreement and Lease dated January 19, 1976, by and between Dunes Hotel Associates and SC Hyatt Corporation ("First Amendment to Agreement and Lease");

c. The Letter Agreement dated July 1, 1983, by and between Dunes Hotel Associates and Hyatt Corporation ("1983 Letter Agreement");

d. The Amendment to Agreement and Lease dated November 7, 1984, by and between Dunes Hotel Associates and SC Hyatt Corporation ("Amendment to Agreement and Lease"); and

e. The Letter Agreement dated November 6, 1985, by and between Dunes Hotel Associates and SC Hyatt Corporation ("1985 Letter Agreement").

16. Section 20 of the initial Agreement and Lease document provides as follows: Upon notice from either party to the other, Hyatt and Owner [Dunes] shall execute (in recordable form) and deliver to the party requesting the same an appropriate instrument, which, when recorded, will impart constructive notice to third parties of the rights of Hyatt under this Lease. Each party hereto shall further execute and deliver all such other appropriate supplemental agreements and other instruments and take such other action as may be necessary to make this Lease fully and legally effective, binding and enforceable as between the parties hereto and as against third parties, or as the other party may reasonably request.

17. No document provided for in Section 20 of the initial Agreement and Lease or any memorandum thereof evidencing the alleged leasehold interest under the SC Hyatt Agreement has been recorded in the official public records of Beaufort County, South Carolina.

18. There are four proofs of claims currently filed against the bankruptcy estate.

a. Aetna asserts a claim as of November 18, 1994, the petition date, of $48,560,392.00, excluding a pre-petition late charge of $1,863,594.39 and default interest accruing at the rate of 13.25% per annum on and after the petition day and post-petition attorney's fees and expenses. Aetna filed a secured proof of claim with the Court on February 23, 1995, in the amount of $50,423,986.39.[5]

b. SC Hyatt Corporation filed an unsecured claim on March 17, 1995 in the

---

5. According to a previous Consent Order of the Court filed on January 23, 1995, Aetna is receiving monthly adequate protection payments in an amount equal to the Promissory Note's contractual rate of interest (9.25%).

amount of $31,438.56 for monies owed from the Debtor arising out a fund entitled Fund for Furnishings and Replacements ("F, F & E Account").

c. The law firm of Wolf, Block, Schorr & Solis–Cohen ("Wolf–Block") filed an unsecured claim against the estate for expenses incurred in connection with services performed in the amount of $2,139.57 on March 20, 1995. Wolf–Block represented the Debtor as well as GEPT pre-petition. According to the attachment to its proof of claim, the amount due represents unreimbursed expenses incurred in connection with the consultation regarding Dunes and Aetna and the Hyatt Adversary during September and October 1994.

d. The Beaufort County Treasurer filed a secured proof of claim for taxes on December 21, 1994 in the amount of $454,786.52. The parties have stipulated that these taxes have been paid.

19. The stipulated value of the Hotel Property exceeds the total amount of the claims filed against the Debtor's estate.

20. Dunes asserts in the amended Chapter 11 Schedules and Statements filed on April 5, 1995 that it has other unsecured creditors whose claims are estimated to total $330,000 and which were paid from the operations of the Hotel Property. (No proof of claims have been filed by or on behalf of these alleged creditors).

21. Prior to the filing of the Chapter 11 case, Hyatt, Aetna and Wolf–Block had actual knowledge of the SC Hyatt Agreement.

22. On March 20, 1995, Dunes filed the "Debtor's Initial Plan of Reorganization Proposed by Dunes Hotel Associates" ("Debtor's or Dunes' Plan") and Disclosure Statement ("Debtor's or Dune's Disclosure Statement"). The Debtor's Plan and Disclosure Statement provides, *inter alia,* the following:

a. As to the Hyatt Claim: If it is finally determined that Hyatt holds an allowed claim against Dunes, the Plan provides that any such allowed claim or claims will be paid in full and in cash subject only to a payment limitation which will be the full amount of the difference on the Effective Date between the market value of the Hotel Property as of the Effective Date and the allowed amount of the Aetna claim before any reduction thereof by the New Value Contribution, and will be treated as an unimpaired creditor.

b. As to Aetna's Claim: The Debtor's Plan provides for Aetna to be treated as an impaired creditor and will have an option for payment. Under the first option, Aetna may receive full payment with recourse to a GEPT guaranty in the form of annual principal payments of $1 million plus monthly interest over a five (5) year period ending with a balloon payment of the balance at the end of the five (5) year period. Pursuant to the first option, Aetna's claim will be paid down to $45,000,000 and that balance restructured into the Tranche One Restructured Aetna Claim and the Tranche Two Restructured Aetna Claim. The Tranche One Restructured Aetna Claim will be a valid and perfected first priority secured obligation in the principal amount of $30,000,000. The Tranche Two Restructured Aetna Claim will be a second priority secured obligation in the principal amount of $15,000,000. Under the second option, Aetna may elect to receive a discounted cash payment of $40,000,000 to be funded by GEPT on the Effective Date of the Plan and assign its claim to the Dunes general partners.

c. As to unsecured creditors: All allowed unsecured claims, except for Hyatt and including Wolf–Block, will be paid in full within the first six (6) months following the Effective Date of the Plan. As to the unsecured creditors listed in the Debtor's amended Chapter 11 Schedules and Statements that previously received payment through the operations of the Hotel Property, Dunes will forego its rights

under the Bankruptcy Code to avoid or otherwise recover such payments. Dunes reserves all of its rights against Hyatt with respect to their unauthorized post-petition disbursements to any individuals or entities affiliated with Hyatt.

23. On May 5, 1995, Dunes filed the "Conditional Modification of the Debtor's Initial Plan of Reorganization Proposed by Dunes Hotel Associates" ("Conditional Modification"). The Conditional Modification provides, *inter alia,* that: in the event the Court finds the Debtor's Plan unconfirmable, the modification may be invoked to pay Aetna and Hyatt immediately and in full on their allowed claims. Funding of this payment in full will be by GEPT to the general partners and the Debtor for distribution through the Plan as "new value" from the Debtor or its general partners.

24. Based upon the Court's directive, on June 29, 1995 the trustees of GEPT submitted a "Statement of Financial Commitment of the Trustees of General Election Pension Trust Regarding the Debtor's Initial Plan of Reorganization Filed By Dunes Hotel Associates, and the Conditional Modification of the Debtor's Initial Plan of Reorganization Proposed by Dunes Hotel Associates" ("Statement of Commitment" or "Commitment"), wherein "GEPT hereby commits to provide to the Dunes General Partners the full amount which, when contributed to Dunes by the Dunes General Partners, will enable Dunes and Reorganized Dunes to perform the Dunes Plan as confirmed by the Bankruptcy Court."

25. The Dunes' Disclosure Statement has been approved by the Court pursuant to Order of June 6, 1995. The Court has further scheduled the hearing on the Confirmation of the Dunes' Plan for September 18 and September 19, 1995.

26. Neither the Plan and Disclosure Statement, Conditional Modification or Statement of Commitment provide for or obligate Dunes to sell the Hotel Property or refinance the obligation to Aetna with a party other than GEPT. They primarily provide GEPT as the source of funding necessary to pay Aetna's claim through a "New Value Contribution" or by way of its recourse guaranty.

27. On February 27, 1995, Dunes filed its Complaint in the within adversary proceeding.

28. The Complaint presents three (3) Claims for Relief, which are summarized as follows:

a. *First Claim For Relief.* In the First Claim for Relief, Dunes asks the Court to avoid Hyatt's claim of an unrecorded leasehold interest in the Hotel Property under the SC Hyatt Agreement pursuant to Bankruptcy Code § 544(a) and the South Carolina recording statutes.[6]

b. *Second Claim For Relief.* In the Second Claim for Relief, and as an alternative claim based upon 11 U.S.C. § 365[7], Dunes asks for a declaratory judgment that the SC Hyatt Agreement is an executory management contract which Dunes is entitled to reject under § 365 if the SC Hyatt Agreement is not avoided as a claim of an unrecorded leasehold interest pursuant to the First Claim for Relief or is not otherwise terminated or terminable because of Hyatt's material breaches of the agreement.

c. *Third Claim For Relief.* In the Third Claim for Relief, and pursuant to § 542, Dunes requests a turnover of the Hotel Property and an accounting if the Court grants the relief requested in either the First Claim for Relief or the Second Claim for Relief.

## CONCLUSIONS OF LAW

In its Motion, Dunes has asked the Court for partial Summary Judgment as to its First

---

**6.** The First Claim for Relief also is the subject of Dunes' motion for partial summary judgment.

**7.** Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* shall be by section number only.

Claim for Relief and an adjudication that Hyatt's claim of an unrecorded leasehold interest in the real property is invalid and void pursuant to § 544(a) and applicable South Carolina state law.

In its Motion, Hyatt alleges that the First Claim for Relief should be dismissed because Dunes and its creditors had actual knowledge and "constructive" notice of the SC Hyatt Agreement, that Dunes' prosecution of the First Claim for Relief will not benefit creditors, and that Dunes lacks standing to prosecute the Complaint because it has no further interest in the SC Hyatt Agreement due to its assignment to Aetna. Hyatt also alleges that the Second Claim for Relief should be dismissed because the SC Hyatt Agreement is not subject to § 365 rejection. And finally, as to the Third Claim for Relief, Hyatt alleges that it too must be dismissed because § 542 cannot be used to recover real property.

As an alternative to the relief requested in its Motion, Hyatt has asked the Court to stay any further proceedings on the Complaint and to defer part or all of the Second Claim for Relief to an independent arbitrator for proceedings under the Federal Arbitration Act ("FAA").

### A. *Standard of Review for Motions*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), made applicable in these proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, may be granted where no set of facts could be proven at trial that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied, sub nom. American Home Prods. Corp. v. Mylan Labs.*, — U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Conley*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80). On a motion to dismiss, a court must make reasonable inferences in favor of the non-moving party. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

In assessing the sufficiency of the Complaint, the Court must accept as true all well pleaded factual allegations contained in the Complaint. However, the Court is not to accept "sweeping and unwarranted averments of fact." *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987), *see, e.g., Homan Mfg. Co. v. Russo*, 233 F.2d 547, 550 (7th Cir.1956) (citations omitted) ("allegations ... are not well pleaded facts unless they constitute reasonable inferences from specific facts otherwise set forth"); *Johnson v. Wells*, 566 F.2d 1016, 1017 (5th Cir.1978) (mere statement in a complaint is not sufficient to state a claim upon which relief can be granted under 42 U.S.C. § 1983). In addition, the Court shall disregard legal conclusions, deductions or opinions couched as factual allegations. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 311–18 (2d Ed.1990); 2A James Wm. Moore *et al., Moore's Federal Practice* ¶ 12.07[2–5] at 12–84 to 12–85 (2d Ed.1995).

When determining a Rule 12(b)(6) motion, the Court is not limited to the factual allegations in the Complaint. The Court may also look to documents attached to the Complaint as exhibits, or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff's possession or of which plaintiff had knowledge and on which it relied in bringing suit. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (on a motion to dismiss, where "a complaint relies on a document ... the plaintiff obviously is on notice of the contents of the document;" accordingly, a court may consider allegations contained in the complaint, exhibits attached to the complaint, matters of public record and certain indisputably authentic documents), *cert. denied,* — U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *see also, Briggs v. Newberry County School Dist.*, 838 F.Supp. 232, 233–34 (D.S.C.1992) (on a motion to dismiss, court may "take judicial notice of adjudicative facts when requested by a party and supplied with the necessary information"), *aff'd,* 989 F.2d 491 (4th Cir.1993).

Finally, should the Court consider matters outside the pleadings, the motion for

dismissal under Rule 12(b)(6) can be converted to a motion for summary judgment and disposed pursuant to Rule 56 of the Federal Rules of Civil Procedure incorporated into the bankruptcy rules pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Rule 56"). Rule 12(b). Because many of the factors which this Court deems are important to its determination of the Hyatt Motion have been subject to stipulation, are not in dispute, are a part of the public record, ·or have been established in hearings in this case previously, and it appearing that the parties had reasonable opportunity to present all material pertinent to the Motions [8] and further it appearing to be in the best interest of the parties, the Court shall treat the Hyatt Motion and the Dunes' Motion as Cross Motions for Summary Judgment.[9]

▮ .Summary judgment is appropriate only where the movant can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1030 (2d Cir.1993). In reaching its determination, the Court must draw all *justifiable* inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (emphasis added); *In re Join–In Int'l (U.S.A.) Ltd. v. New York Wholesale Distribs. Corp. (In re Join–In Int'l (U.S.A.) Ltd.)*, 56 B.R. 555, 558 (Bankr. S.D.N.Y.1986). On a summary judgment motion, the Court does not try factual issues; rather, it determines whether there are any fact issues to be tried.

▮ One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.... *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986). *See, The Investment Center, Inc. v. Fowler (In re The Investment Center Inc.)*, 88–01472, C–88–0244

(Bankr.D.S.C. 6/9/89) (JBD). *Fine v. Marks (In re Marks)*, 40 B.R. 614 (Bankr.D.S.C. 1984).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

▮ The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91· L.Ed.2d 202 (1986) (emphasis in original). Further, there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.... If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). *See also, Parker v. Campbell (In re Parker Pontiac–Olds Inc.)* C.A. 2:92–3545–1 (D.S.C. 7/23/93).

▮ After the party seeking summary judgment has met its burden of coming forward with proof of the absence of any genuine issues of material fact, the burden of proof shifts and the party opposing summary judgment may not merely rely on his pleading but must set forth specific facts which controvert the moving party's facts and which show the existence of a genuine issue for trial. *Celotex Corp. v. Catrett, supra; Lundeen v. Cordner*, 356 F.2d 169 (8th Cir. 1966); *First National Bank v. First Bank Stock Corp.*, 306 F.2d 937 (9th Cir.1962); *Brown v. Phipps (In re Brown)*, Slip Op. at p. 16–17; Wright & Miller, *Federal Practice & Procedure, Civil* § 2727 àt p. 143–146

---

8. Debtor's counsel recognized that Hyatt's Motion may be treated by the Court as a Motion for Summary Judgment. Transcript of hearing on June 1, 1995 at p. 39.

9. The ruling expressed herein on the Hyatt Motion would be the same even if the motion was treated as a motion under Rule 12(b)(6) and utilizing the standards for review thereof.

(1969). *Standard Federal Savings & Loan v. Vaughn (In re Vaughn)*, 88–01308, C–88–0210 (Bankr.D.S.C. 10/27/88) (WTB).

Upon consideration of the evidence and stipulation of parties presented in this case, there remains no genuine issue of material fact and therefore the matters raised by both of the Motions of Dunes and Hyatt are determinable as a matter of law.

### B. *Dunes' First Claim—Avoidance of Hyatt's Lease Pursuant to 11 U.S.C. § 544(a)*

■ In the First Claim for Relief, Dunes, as Debtor-in-Possession, asks the Court to avoid Hyatt's claim of an unrecorded leasehold interest in the Hotel Property pursuant to South Carolina law as made applicable by §§ 544 and 550 of the Bankruptcy Code.

Section 544(a), frequently referred to as the "strong arm clause", provides that the trustee is entitled to avoid any transfer of property that is avoidable under state law by: (i) a perfected judicial lien creditor, whether or not any such creditor exists; (ii) a creditor with an execution returned unsatisfied, whether or not any such creditor exists; and (iii) a *bona fide* purchaser of real property, whether or not any such purchaser exists.[10] Under § 1107(a), a debtor-in-possession has the status and is entitled to exercise the powers of a trustee under § 544(a). *See* § 1107(a); *In re Kitchin Equipment Co. of Virginia, Inc.*, 960 F.2d 1242, 1245 (4th Cir. 1992).

The three South Carolina statutes on which the Debtor-in-Possession relies and seeks to use to avoid the unrecorded lease are South Carolina Code of Laws, Ann. §§ 30–7–10, 30–7–90 and 27–33–30 (1976).[11] Summarily, South Carolina Code § 30–7–10 provides that any lease for a period of longer than twelve (12) months must be recorded in the appropriate public real property records in order to be effective against subsequent lien creditors and bona fide purchasers without notice. South Carolina Code § 30–7–10. South Carolina Code § 30–7–10 provides as follows:

All deeds of conveyance of lands, tenements, or hereditaments, either in fee simple or for life, all deeds of trust or instruments in writing conveying estate, creating a trust in regard to the property, or charging or encumbering it, all mortgages or instruments in writing in the nature of a mortgage of any real property, all marriage settlements, or instruments in the nature of a settlement of a marriage, all leases or contracts in writing made between landlord and tenant for a longer period than twelve months, all statutory liens on buildings and lands for materials or labor furnished on them, all statutory liens on ships and vessels, all certificates of renunciation of dower, all contracts for the purchase and sale of real property, all assignments, satisfactions, releases, and contracts in the nature of subordinations, waivers, and extensions of landlords' liens, laborers' liens, sharecroppers' liens, or other liens on real property created by law or by agreement of the parties and generally all instruments in writing conveying an interest in real estate required by law to be recorded in the office of the register of mesne conveyances or clerk of court in

---

**10.** Section 544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, as such time and with

respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**11.** Further references to the South Carolina Code of Laws, Ann. (1976) (as amended) shall be by reference to the South Carolina Code.

those counties where the office of the register of mesne conveyances has been abolished or in the office of the Secretary of State delivered or executed after July 31, 1934, except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of mesne conveyances or clerk of court of the county in which the real property affected is situated. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.

In the within proceeding, there is no dispute that the leasehold interest created by the SC Hyatt Agreement has a term of at least thirty (30) years, with an option to renew and extend the term for an additional ten (10) years and that it has not been recorded in the records of Beaufort County, South Carolina. Therefore, it falls squarely within the recording requirements of South Carolina Code § 30–7–10.

South Carolina Code § 30–7–90 states that "[n]o possession of real property described in any instrument of writing required by law to be recorded shall operate as notice of such instrument. Actual notice shall be deemed and held sufficient to supply the place of registration only when such notice is of the instrument itself or of its nature and purport". South Carolina Code § 27–33–30 pro-

vides that "[i]n order to give notice to third persons any lease or agreement for the use or occupancy of real estate shall be recorded in the same manner as a deed of real estate".

Because it is undisputed that the lease agreement is not recorded, Dunes maintains that under these statutes applications, as a matter of law, it, as a hypothetical lien creditor at the commencement of the case, takes priority over and may avoid the SC Hyatt Agreement pursuant to § 550 [12].

Hyatt responds with its own motion and asserts five separate grounds of defense and seeks dismissal of the § 544 avoidance claim. First, Hyatt alleges that Dunes may not avoid the leasehold interest because controlling Fourth Circuit law holds that a debtor's actual knowledge of a pre-petition real estate transaction to which it was a party precludes a debtor-in-possession from avoiding the transaction under § 544(a) where the transaction is enforceable against a debtor under applicable non-bankruptcy state law. Next, Hyatt argues that where *all* of a debtor's creditors had actual knowledge of an unrecorded interest, a debtor-in-possession is not permitted to avoid that real estate interest under § 544(a). Third, Hyatt argues that South Carolina state law puts a purchaser or judgment lien creditor on inquiry or constructive notice of any interest in real estate which is indicated in the recitals of an instrument in the recorded chain of title and that since the subject lease agreement is referenced in instruments in the recorded chain of title of this real property, such notice would defeat the application of the state statutes. Fourth, Hyatt challenges Dunes' standing to pursue the First Claim because Dunes cannot show any benefit to its creditors from avoidance of the transfer under the SC Hyatt Agreement. Finally, Hyatt argues that Dunes made an absolute assignment of the

**12.** Section 550 provides in pertinent parts:
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.
(b) The trustee may not recover under section (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee ...

SC Hyatt Agreement to Aetna as part of its security for the loan from Aetna, which assignment was triggered by Dunes' failure pay its Promissory Note on July 1, 1994 and, as a result, Dunes has no interest in the SC Hyatt Agreement upon which to base its avoidance claim. Each of these arguments would, if correct, lead to dismissal of the First Claim and denial of Dunes' motion.

Whether a debtor-in-possession may, using §§ 544 and 550, avoid an unrecorded lease under the aforesaid South Carolina statutes is an issue of first impression in this District which this Court will determine in the context of examining each of the defenses raised by Hyatt.

### 1. Issues Regarding Knowledge of Debtor or Creditors

### i. Actual Knowledge of Debtor

Dunes asserts that its powers under § 544(a) are to be exercised without consideration of any knowledge it may have had as Debtor or of any creditor of the Dunes estate pursuant to the express language of § 544(a). *See* § 544(a) (the rights and powers created under § 544(a) are applied "without regard to any knowledge of the trustee or of any creditor"); *see also Kitchin Equipment,* 960 F.2d at 1245 ("A trustee or a debtor-in-possession, without regard to any knowledge, is empowered to avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by a hypothetical lien creditor.") (citing §§ 544(a)(1) and 1107(a)).

Hyatt cites, as controlling authority, the Fourth Circuit's decision in *In re Hartman Paving, Inc.,* 745 F.2d 307 (4th Cir.1984). In *Hartman Paving,* a debtor-in-possession attempted to avoid a deed of trust under West Virginia law because the document, although recorded, had been improperly acknowledged under state law. The Fourth Circuit refused to allow the debtor-in-possession to avoid the deed of trust based on the defective acknowledgment, and imputed the debtor's actual knowledge of the deed of trust to the debtor-in-possession to block avoidance. *Hartman Paving,* 745 F.2d at 306–09. While the deci-

sion in *Hartman Paving* has never been formally reversed or reconsidered by the Fourth Circuit or the United States Supreme Court, it is questionable whether *Hartman Paving* (if more broadly applicable than its facts) is still the Fourth Circuit's pronouncement of applicable law. As will be developed more fully within, it appears to this Court that *Hartman Paving*'s imputation of a debtor's *actual* knowledge to a debtor-in-possession's use of statutory avoidance is in direct conflict with the plain language of §§ 544(a) and 1107(a).

In the case of *Kitchin Equipment* (post *Hartman Paving* ), the Fourth Circuit specifically found that a debtor-in-possession is entitled to exercise § 544(a) avoidance powers without regard to any knowledge of the debtor. *Kitchin Equipment,* 960 F.2d at 1245 (citing with approval *In re York Chemical Industries,* 30 B.R. 583, 585 (Bankr. D.S.C.1983)).[13] As commented upon in *Kitchin Equipment,* when Congress amended the Bankruptcy Code effective October 22, 1994, Congress did not make any modification to the otherwise universally accepted principle that the debtor's actual knowledge is not imputed to either the trustee or the debtor-in-possession under § 544(a). *See Kitchin Equipment,* 960 F.2d at 1245.

Every other circuit court to discuss *Hartman Paving* has declined to follow the decision. *See In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1336 (7th Cir.1986); *In re Probasco,* 839 F.2d 1352, 1354–55 n. 2 (9th Cir.1988); *In re Kim,* 161 B.R. 831, 836–37 (9th Cir. BAP 1993). Furthermore, the *Hartman Paving* court's imputation of a debtor's actual knowledge to a debtor-in-possession despite the clear contrary language of § 544(a) is a type of statutory analysis of the Bankruptcy Code which has been rejected and criticized in numerous recent Supreme Court decisions. *See Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991); *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Patterson v. Shumate,* 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119

---

**13.** In *In re York Chemical,* the court stated that under § 544(a)(1), "the debtor-in-possession is deemed to be without knowledge of an unfiled

security interest. . . ." *In re York Chemical,* 30 B.R. at 586.

L.Ed.2d 519 (1992); *Owen v. Owen,* 500 U.S. 305, 313, 111 S.Ct. 1833, 1837–38, 114 L.Ed.2d 350 (1991); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

As recognized by other courts within this Circuit, the *Hartman Paving* decision should be limited to the particular facts and circumstances which it addressed. *See In re MSC, Inc.,* 54 B.R. 650, 653–54 (Bankr.D.S.C.1985) (court limited *Hartman Paving* to its facts and allowed a debtor-in-possession to avoid an unperfected lien under § 544(a)(1) even though the debtor had actual knowledge of the lien); *In re Greenbelt Co-op., Inc.,* 124 B.R. 465, 471–72 (Bankr.D.Md.1991) (same).

The holding of *Hartman Paving* is based on a specific distinguishable fact pattern and does not control such a fundamental failure to record as occurred in this case by Hyatt. In this case, Hyatt holds a thirty (30) year commercial leasehold with a ten (10) year option to renew. The Defendants are sophisticated commercial entities which expressly recognized the need to record the SC Hyatt Agreement if they wanted to create a valid, perfected, and enforceable leasehold interest under South Carolina law.[14] Unlike the facts of *Hartman Paving,* Hyatt's claim of a leasehold interest is not being attacked due to a mere technical defect in an acknowledgment of the agreement or any other technicality, but because of Hyatt's failure to take the most basic step under South Carolina law to perfect a claimed leasehold interest.

Accordingly, in determining the threshold application of § 544(a) to this case, the *Hartman Paving* decision does not defeat Dunes' right to summary judgment on its First Claim for Relief; and the Fourth Circuit's *Kitchin Equipment* decision (rendered eight (8) years after *Hartman Paving*) and the

other authorities cited above reinforce Dune's reliance on and use of § 544(a).

Hyatt further asserts that the actual knowledge or constructive notice of creditors would defeat Dunes claim as a matter of state law.

#### ii. Actual Knowledge of Creditors

Hyatt asserts that despite the failure to record, all creditors of Dunes had such an actual knowledge of the SC Hyatt Agreement as would defeat their ability under South Carolina Code § 30–7–10 to avoid the lease under this agreement. Hyatt cites the dissenting opinion in *Hartman Paving* and this Court's ruling in *In re MSC, Inc.,* 54 B.R. 650 (Bankr.D.S.C.1985) for the proposition that upon proof of all creditors' knowledge of an unperfected interest in property, a transferee would be able to protect and enforce that interest[15].

■ Under South Carolina law, actual notice of an unrecorded lease may defeat a subsequent creditor or bona fide purchaser from asserting protection under South Carolina Code § 30–7–10. *Friarsgate, Inc. v. First Federal Savings and Loan,* 454 S.E.2d 901 (S.C.App.1995), *Leasing Enterprises v. Livingston,* 294 S.C. 204, 363 S.E.2d 410 (App.1987). While eliminating possession of property as a means of asserting notice of an interest, South Carolina Code § 30–7–90 continues to provide for *actual notice* of the instrument itself and implies that it is to be considered despite a lack of recording.

■ Dunes takes the position that South Carolina Code § 27–33–30 is the controlling statute and that it eliminates actual notice as a defense to the lack of recording. However, the Court is compelled to reconcile these two statutes, §§ 30–7–90 and 27–33–30, together

---

**14.** As stated in the Findings of Fact, Section 20 of the initial *"Agreement and Lease"* document provides as follows:

Upon notice from either party to the other, Hyatt and Owner shall execute (in recordable form) and deliver to the party requesting the same an appropriate instrument, which, when recorded, will impart constructive notice to third parties of the rights of Hyatt under this Lease. Each party hereto shall further execute and deliver all such other appropriate supplemental agreements and other instruments and

take such other action as may be necessary to make this Lease fully and legally effective, binding and enforceable as between the parties hereto and as against third parties, or as the other party may reasonably request.

**15.** It is undisputed that Aetna, Hyatt and Wolf-Block have at all times had actual prepetition knowledge of the existence and nature of Hyatt's leasehold interest and of the SC Hyatt Agreement.

in interpreting the legislature's intention. In this regard, the Court believes that actual notice survives under state law as a defense to the lack of recording. See *Friarsgate*.

However, as stated earlier, § 544(a) provides that a debtor-in-possession's status is "without regard to any knowledge of the debtor or of a creditor." The express language of § 544(a) appears to overcome any defense the transferee may raise because of all creditor's actual knowledge, even if such defense ordinarily exists under state law.

The leading case on this issue is the Third Circuit's decision in *McCannon v. Marston*, 679 F.2d 13 (1982). In *McCannon*, the Court in reversing the Bankruptcy and District Courts, found that § 544(a) permits a trustee to exercise the rights and powers of certain creditors and purchasers without regard to any actual knowledge of a trustee or of any creditor.[16] In reaching its decision, the Court expounded on the importance of the wording of the statute:

> The reference to the trustee's or creditors' knowledge appears to have originated out of a concern that actual knowledge might affect the trustee's status as a hypothetical judicial lien creditor. In a draft bankruptcy act prepared in 1973 by the Commission on Bankruptcy Laws of the United States, a note by the Commission explained that the trustee's status as hypothetical lien creditor should not be affected by any knowledge which he, personally, or any or all creditors may have.

*McCannon*, at 16. See *Matter of Alberto*, 66 B.R. 132 (Bankr.D.N.J.1985), *In re Bick*, 874 F.2d 815 (9th Cir.1988), *In re Professional Investment Properties of America*, 955 F.2d 623 (9th Cir.1992).

In attempting to reconcile *Hartman Paving* with *McCannon*, the Northern District of Texas sided with the *McCannon* opinion and found that under § 544(a), actual knowledge was irrelevant regardless of the state law of actual notice. *McEvoy v. Ron Watkins, Inc.*, 105 B.R. 362 (N.D.Tex.1987). A similar result when comparing *Hartman Paving* and *McCannon* was reached in the Southern District of Indiana. *In re Graham*, 110 B.R. 408 (S.D.Ind.1990).

Other bankruptcy courts following this analysis include the Middle District of Florida which held that the argument that a debtor can not claim the status of a bona fide purchaser for value when they had actual notice "overlooks the basic theme of § 544 which is that the voiding power granted to the trustee under this section is granted without regard to any knowledge of the trustee or of any creditor." *In re Lakeside I Corp.*, 120 B.R. 213 (Bankr.M.D.Fla.1990). The *Lakeside* Court in citing Collier on Bankruptcy further stated that "[§ 544(a)] conferred upon the trustee ... the status of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the estate upon its most favored creditor who has acquired a lien by legal or equitable proceedings.'" *In re Lakeside I Corp.* at 215.

Numerous other Bankruptcy and District Courts follow the *McCannon* reasoning. See *In re Cirasuolo*, 48 B.R. 447 (Bankr. N.D.N.Y.1985) (the trustee's status as hypothetical lien creditor should not be affected by any knowledge which he, *personally*, or any or all creditors may have); *In re Don Williams Const. Co., Inc.*, 143 B.R. 865 (Bankr.E.D.Tenn.1992) (the trustee's rights as a judgment lien creditor and a bona fide purchaser are not affected by his own knowledge or the knowledge of any creditor).

This underlying principal regarding actual notice in *McCannon* logically reconciles with the reasoning that § 544(a), unlike § 544(b), grants a debtor-in-possession a status of a *hypothetical* creditor or bona fide purchaser and is not dependent upon the debtor-in-possession standing in the place of an actual creditor and relying upon that creditor's actual knowledge.

Despite Hyatt's arguments, the dissenting opinion in *Hartman Paving* correctly cited the true meaning of § 544(a):

---

**16.** However, the *McCannon* Court did not allow the trustee to avoid an unrecorded purchase of a condominium because the purchaser's possession gave the trustee constructive notice of the interest pursuant to applicable state law.

The bankruptcy trustee attains such idealized status whether or not he or any actual creditor had actual knowledge of pre-existing obligations of the debtor. The same is true of a debtor-in-possession; he assumes the same idealized status as the bankruptcy trustee without regard to any knowledge he or any creditor on whose behalf he acts may have. 11 U.S.C. § 544(a) ...

*Hartman Paving,* dissent at 311. *See Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416 (4th Cir.1984) and *Ingersoll–Rand Financial Corp. v. Nunley,* 671 F.2d 842 (4th Cir.1982).

In a footnote, the Ninth Circuit in criticizing the majority opinion in *Hartman Paving* stated:

The Fourth Circuit severely limited the use of section 544(a). In *Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.),* 745 F.2d 307 (4th Cir.1984), a divided court held that any actual knowledge of a debtor at the time of commencement of the case regarding an unrecorded interest in real property in imputed to a debtor-in-possession so as to limit his rights as a bona fide purchaser ... In a persuasive dissent in *Hartman Paving,* Chief Judge Winters argued that "a debtor-in-possession ... assumes the same idealized status as the bankruptcy trustee without regard to any knowledge he or any creditor on whose behalf he acts may have." 745 F.2d at 311 (Winters, C.J., dissenting). A majority of the courts directly addressing the issue share Judge Winters view. [*citations omitted* ]. For purposes of this opinion, we assume without deciding, that Judge Winter's position is correct and [the debtor's] actual knowledge is irrelevant.

*In re Probasco,* 839 F.2d 1352 at Fn 2 (9th Cir.1988).

As dicta in his opinion, Chief Judge Winter theorized that only if there was actual knowledge by all creditors would he see any justification for the majority's ruling under West Virginia State Law. Like Judge Winter, Chief Judge Davis of this Court in *MSC* was faced with the dilemma of reconciling the majority decision in *Hartman Paving* with the express language of § 544(a). This Court is not bound under the facts at hand by the statements in either case relied upon

by Hyatt. Therefore, Hyatt's motion that actual knowledge of all creditors serves as a defense herein is denied.

### iii. Constructive Notice

A number of the reported cases that recognize that actual knowledge of the debtor or creditors is not a defense to a § 544(a) action under state law, have held that constructive notice as a defense under state law, is not eliminated by the language of § 544(a). In citing *McCannon,* the Court in *McEvoy* held that "[w]hile § 544(a) removed considerations of actual notice, the state law of constructive notice remains applicable in the context of § 544(a)(3)". *McEvoy,* at 365. In *McCannon,* the Court in differentiating the words "notice" and "knowledge" held:

That the words "without regard to any knowledge" were not meant by Congress to nullify all state law protections of holders of equitable interest is suggested both by the history of its inclusion in the statutory language and by other language within Section 544(a)[3].

*McCannon,* at 16.

Numerous other Courts have followed the *McCannon* distinction between constructive notice and knowledge. The Southern District of New York has held that "[f]irst, the terms are not equivalent. The term 'knowledge' as employed in § 544(a) comports actual notice, not constructive notice. The choice of that term 'knowledge' rather than the broader term 'notice' thus indicates that Congress did not intend to shield the trustee under § 544(a) from the effect of constructive notice". *In re Euro–Swiss Intern. Corp.,* 33 B.R. 872, 881 (Bankr.S.D.N.Y.1983) (citations omitted).

The Bankruptcy Court for the Northern District of West Virginia has held that:

The weight of authority is that the phrase "without regard to any knowledge of the trustee or any creditor" of 11 U.S.C. § 544(a)(3), indicates that a trustee would not have the notice that would interfere with his bona fide purchaser status of § 544(a)(3), if he, in fact, actually knew of the lien or prior conveyance. However, the trustee, as a bona fide purchaser under § 544(a)(3), is subject to all the construc-

tive notice provisions of the state in which the trustee is attempting to assert his § 544 power. If there is such constructive notice as would preclude a bona fide purchaser from prevailing under state law, then the trustee cannot prevail under § 544(a)(3).

*In re Morgan,* 96 B.R. 615, 618 (Bankr. N.D.W.Va.1989). Therefore, broad case authority allows constructive notice to remain as a defense under § 544(a) if it is allowable under state law.

In the instant case, Section 20 of the initial SC Hyatt Agreement specifically recognized that either party could require such recordation as would be required to "impart constructive notice to third parties of the rights of Hyatt under this Lease" and to make the claimed leasehold interest "fully and legally effective, binding and enforceable as between the parties hereto and as against third parties." This section contemplated the prospect of constructive notice and unequivocally gave either party, including Hyatt, the absolute right to demand recordation of the Agreement. Nevertheless, Hyatt failed or chose not to require recordation of the SC Hyatt Agreement during the more than 20–year period since the execution of the initial Agreement and Lease.

It is generally recognized that the purpose of the South Carolina recording statutes is to provide notice and to protect parties with subsequent interest in property. It places the requirement of recording on the parties to the contract which seek protection. *See Burnett v. Holliday Bros., Inc.,* 279 S.C. 222, 305 S.E.2d 238, 240 (1983) ("the purpose of the Recording Statute is to protect subsequent purchasers, for value without notice.... As the Cases repeatedly indicate, one who neglects to record conveyances must suffer the consequences of his neglect."). However, Hyatt asserts that any subsequent interest holders in this case would be subject to constructive notice of the lease because portions of the SC Hyatt Agreement are referenced in the recorded Aetna Assignment, and therefore such creditors would not be entitled to the protection of South Carolina Code § 30–7–10.

Generally South Carolina law does impute knowledge of any properly recorded instrument affecting title and of all recitals in such instruments referring to documents affecting title. *Carolina Land Co. v. Bland,* 265 S.C. 98, 217 S.E.2d 16 (1975). *South Carolina Tax Comm'n v. Belk,* 266 S.C. 539, 225 S.E.2d 177, 179 (1976) (party may not be a bona fide purchaser where "sufficient record notice is available to charge the purchaser with a duty to inquire which, if pursued with due diligence would have supplied him with knowledge of the rights of other parties."); *Kirton v. Howard,* 137 S.C. 11, 134 S.E. 859, 868 (1926) (where there is any evidence in the chain of title sufficient to put a party on inquiry notice of an interest in property, purchaser is chargeable as a matter of law with actual notice of facts that could have been discovered by proper inquiry); *Moyle v. Campbell,* 126 S.C. 180, 119 S.E. 186, 190 (1923) (purchaser is charged with notice of all recorded instruments in chain of title and unrecorded instruments affecting title that are referred to in the recorded instruments); *Fuller–Ahrens Partnership v. South Carolina Dep't of Highways & Pub. Transp.,* 311 S.C. 177, 427 S.E.2d 920 (App.1993) (same); *Glover v. Lewis,* 299 S.C. 44, 382 S.E.2d 242, 245 n. 3 (App.1989) (same); *Arceneaux v. Arrington,* 284 S.C. 500, 327 S.E.2d 357, 359 (App.1985) (same).

However, South Carolina Code § 30–7–90 provides that possession of real property will *not* provide "constructive" or "inquiry" notice of an unrecorded interest in property. *See Epps v. McCallum Realty Co.,* 139 S.C. 481, 138 S.E. 297, 306 (1927) (actual possession of real property will not act as constructive notice of any instrument that is required to be recorded under [the current] South Carolina Code § 30–7–10). Furthermore, South Carolina Code § 27–33–30 specifically requires that in order to give third parties notice of a lease, the lease must be recorded in the same manner as a deed of real estate. It appears to this Court that South Carolina statutory law expressly provides that the only way to provide "notice" of a leasehold interest to third parties is by proper recording of the lease. This express statutory language supplants the use of constructive or inquiry notice in regards to the recording of

a lease in South Carolina.[17] For this Court to hold otherwise would give these statutes no meaning.

Finally, Bankruptcy Courts applying state recording statutes similar to South Carolina's strict recording requirements have recognized that an unrecorded lease is subject to avoidance by a debtor-in-possession.

> [W]here the applicable state law makes clear that strict conformity to a recording statute *is* necessary to constitute notice of a lien, then no act other than strict conformity with the statute in issue insulates the lien from attach by the trustee under § 544(a)(3). In such a case, the trustee can successfully attack any lien not recorded in strict conformity to the state recording laws.

*In re Carlyle,* 100 B.R. 217 (Bankr.E.D.Pa. 1989). *Also see, In re Webber Lumber & Supply Co., Inc.,* 134 B.R. 76, 77–79 (Bankr. D.Mass.1991) (court construes Massachusetts recording requirements similar to South Carolina's and allows a debtor-in-possession to avoid an unrecorded real property lease under each independent basis of § 544(a)); *In*

*re Belize Airways Ltd.,* 12 B.R. 387, 389–90 (Bankr.S.D.Fla.1981) (court allows avoidance of a commercial sublease under § 544(a)(3) because the defendant failed to record the sublease as required under Florida law).

There is no dispute that the SC Hyatt Agreement, asserted to be a lease for this claim by both parties, was never recorded as required by South Carolina Code § 27–33–30. Accordingly, there is no "constructive", "inquiry", or any other kind of "implied notice" that can block Dunes' avoidance of Hyatt's claim of a leasehold interest.[18]

### 2. Benefit to the Estate Pursuant to 11 U.S.C. § 550

 Hyatt also challenges Dunes' standing to pursue the First Claim because Dunes cannot show any benefit to creditors from avoidance of the real estate transfer under the SC Hyatt Agreement.

 The sole purpose of avoidance powers granted to a trustee or debtor-in-possession under the Bankruptcy Code is to benefit the estate. 11 U.S.C. § 550; *Wellman v.*

---

**17.** This is confirmed by a review of the predecessor statute to South Carolina Code § 27–33–30 and of the case law construing the predecessor statute in relation to § 30–7–10. The predecessor to South Carolina Code § 27–33–30 was § 8804 of the 1932 South Carolina Code, which provided as follows:

> All leases or contracts in writing, hereafter to be made between landlord and tenant, for a term longer than twelve months, shall not be valid in law, against the rights and claims of third persons, unless the same shall have been recorded . . .

South Carolina Code § 8804 (1932) (repealed).

In *First Presbyterian Church of York v. York Depository,* 203 S.C. 410, 27 S.E.2d 573 (1943), the court construed the meaning of "third persons" under § 8804 in light of the general recording act contained in § 8875 of the South Carolina Code of 1942 (now South Carolina Code § 30–7–10). The Court found that the term "third persons" in South Carolina Code § 8804 meant only subsequent creditors without notice or subsequent purchasers without notice, in part because these were the terms used in the general recording statute. The court further found that because the general recording statute already covered such persons, South Carolina Code § 8804 appeared to be superfluous. *Presbyterian,* 27 S.E.2d at 578–79.

Additionally, in 1962, after the *Presbyterian* decision was rendered, the South Carolina legislature amended the language of South Carolina

Code § 8804 to include the present language of South Carolina Code § 27–33–30. (*See* South Carolina Code § 41–4 (1962).) In amending the statute, the legislature specifically inserted the language that recording of leases is required to give "notice" to third parties. The legislature's deletion of the "validity" language of South Carolina Code § 8804 and insertion of the term "notice" clarifies that South Carolina Code § 27–33–30 is not "superfluous," but is meant to define the manner in which "notice" of a lease must be given.

**18.** Hyatt has never addressed or discussed the effect of South Carolina Code §§ 30–7–10, 30–7–90, and 27–33–30 in their briefs or in oral argument before the Court. The authorities cited by Hyatt in support of their "constructive" notice argument are inapplicable to this case because they do not deal with real property leases or the specific lease recording requirements of the South Carolina Code. *See* Hyatt Memo at pp. 18–19 (citing *Fuller–Ahrens Partnership v. South Carolina Dep't of Highways And Public Transp.,* 311 S.C. 177, 427 S.E.2d 920 (App.1993); *South Carolina Tax Comm'n v. Belk,* 266 S.C. 539, 225 S.E.2d 177, 179 (1976); *Glover v. Lewis,* 299 S.C. 44, 382 S.E.2d 242, 245 n. 3 (App.1989)). South Carolina Code §§ 30–7–10, 30–7–90, and 27–33–30 provide a clear legislative intent that only proper recordation of a lease can provide "notice" of a lease.

*Wellman,* 933 F.2d 215, 218 (4th Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991); *Harstad v. First Am. Bank (In re Harstad),* 155 B.R. 500, 511 (Bankr.D.Minn.1993) (avoidance actions are for benefit of creditors, not the debtor), *aff'd,* 1994 WL 526013 (D.Minn.), *aff'd,* 39 F.3d 898 (8th Cir.1994). See also, *Vintero Corp. v. Corporacion Venezolana de Fomento (In re Vintero Corp.),* 735 F.2d 740 (2d Cir.) (under the Bankruptcy Act, a debtor-in-possession may not exercise lien avoidance powers for the debtors' own benefit), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). A debtor-in-possession is a fiduciary who "holds avoidance powers in trust for the benefit of creditors...." *In re J.E. Jennings, Inc.,* 46 B.R. 167, 169 (Bankr.E.D.Pa. 1985).

Dunes takes the position that benefit to the estate is not a concept tied or limited to establishing any specific benefit to individual creditors. In support of this position, Dunes relies upon the *Trans World Airlines (TWA)* decision which held that:

> "Estate" is a broader term than "creditors." There is no requirement that an avoidance action recovery be distributed (or "committed") in whole or in part to creditors. Indeed, the Code clearly contemplates otherwise. Pursuant to § 541(a) an estate is created by the petition filing, and under § 541(a)(3) property of the estate includes property recovered in avoidance actions. Pursuant to § 363, the DIP may use property of the estate either in the ordinary course of business, or, with the Court's approval, outside the ordinary course of business. Thus the Code clearly contemplates the use of avoidance actions in ... a manner which only indirectly benefits creditors.

*In re Trans World Airlines, Inc.,* 163 B.R. 964, 972 (Bankr.D.Del.1994).

■ In determining whether an avoidance action benefits the estate, the *Trans World Airlines (TWA)* court held that the dispositive question is whether the action will increase the value of the debtor's estate

and/or improve the debtor's prospects for rehabilitation and reorganization. *TWA,* 163 B.R. at 973. Dunes also cites the case of *In re Funding Systems Asset Management Corp.,* 111 B.R. 500 (Bankr.W.D.Pa.1990), in which the court similarly found that an avoidance action is proper when the "recovery by the debtor will increase its assets and improve its financial health to the extent that the likelihood is improved of its being able to satisfy its obligations to its creditors under the plan." *Funding Systems,* 111 B.R. at 523–24. When such a benefit to the estate will be realized, an avoidance action is proper even if the action will not result in any increase in the amount creditors will receive. *Funding Systems,* 111 B.R. at 500.

■ While the requirement of "benefit to the estate" in § 550 is subject to different interpretations by different courts, under the recent *Wellman* decision, the Fourth Circuit made it clear that such a requirement means more than merely a *benefit to the debtor.* Where no creditors can benefit from the avoidance action, or where creditors benefit solely at the discretion of a debtor, the debtor does not have standing to bring the avoidance action. *Wellman,* 933 F.2d at 218. Likewise, where a debtor is solvent, such that any recovery is unnecessary to satisfy *any* creditors' claims, a debtor does not have standing to bring an avoidance action. *Wellman,* 933 F.2d at 219. The Fourth Circuit is unequivocal that a debtor may not use an avoidance action to create a windfall for itself where there is no creditor benefit. *Wellman,* 933 F.2d at 218; *see also In re Vintero,* 735 F.2d at 742.

Therefore, this Court must undertake an analysis of benefit to the estate and start with the purported benefit to the three claimants, Aetna, Hyatt and Wolf–Block.[19]

Aetna has filed a secured claim which, while disputed as to the amount of interest due, admittedly is oversecured. Absent the § 362 stay, Aetna would be paid in full from its collateral; the Hotel Property and its revenues. Even according to the Debtor's

---

19. This analysis is the same as that made under § 365 and therefore reference should also be made to pages 990 through 91 hereof.

Plan and Disclosure Statement and Conditional Modification before the Court, the repayment of Aetna's debt will be funded and/or guaranteed by GEPT. Either way, Aetna's repayment in full is not dependent upon nor materially enhanced by the avoidance of the SC Hyatt Agreement.[20]

Hyatt has filed an unsecured claim, disputed by Dunes, of approximately $30,000 for pre-petition carpet replacement which would routinely be reimbursed by Dunes to Hyatt through the operational revenues of the Hotel Property. The Debtor's Plan and Conditional Modification provide for the payment in full of Hyatt's allowed claim(s) either by the solvent Debtor-in-Possession or if necessary, with funding to be provided by GEPT. This claim is certainly not dependent upon the avoidance of the SC Hyatt Agreement.

The insider law firm of Wolf–Block has filed an unsecured claim for approximately $2,200 for expenses, which is vigorously disputed by both Hyatt and Aetna as being properly a debt of GEPT rather than Dunes. Hyatt has filed an objection to the Wolf–Block claim as well as all other alleged unsecured claims scheduled by the Debtor. There is no doubt that the Wolf–Block claim, if a true claim, could have easily been paid and ordinarily would have been paid by the funds from the operations of the Hotel Property or it would be paid from the equity in the Hotel Property. In such event, it is not benefitted or effected by the avoidance action. Separately, in this Court's view, the claim of Wolf–Block appears either artificially created or preserved by the Debtor for purposes of its bankruptcy case. This is indicated by Wolf–Block's refusal to accept payment, even an offer by Aetna of two

hundred (200%) percent of the face amount of the claim. In such an event, equity does not allow Wolf–Block's purported claim to be used by a solvent debtor to manipulate confirmation requirements or create standing to utilize avoidance powers. This reasoning is analogous to the ruling of this Court in *In re W.C. Peeler Co.*, 182 B.R. 435 (Bankr.D.S.C. 1995) (Bishop, J.)). *Also see In re Bryson Properties, XVIII*, 961 F.2d 496, 502 (4th Cir.1992): (Classification clearly for the purpose of manipulating voting, may not stand); *In re Greystone III Joint Venture* 948 F.2d 134, 136 (5th Cir.1992) (as amended) (thou shalt not gerrymander an affirmative vote on a reorganization plan).

Dunes also has alleged in its Complaint and Amended Schedules and Statements, the existence of other unsecured claims which the Debtor's Plan and Disclosure Statement estimates at approximately $330,000. These operational expenses of the Hotel Property have been previously paid and no proofs of claims on behalf of these "creditors" have been filed. Additionally, the Debtor's Plan proposes that these "creditors" retain their payments, and while characterizing them as part of an impaired class due to their retention of payments when received, they appear unimpaired. It is clear to this Court that the only unpaid unsecured claims to be affected by reorganization are those of Hyatt and Wolf–Block.[21]

As the value of the Hotel Property exceeds $52.5 million, the total present claims against the Debtor-in-Possession fall well short of the value of the Hotel Property.[22] The Dunes estate appears solvent and able to pay all claims in full without resorting to the avoidance of the SC Hyatt Agreement[23] even

---

**20.** While the Debtor-in-Possession alleges that the sale or refinancing of the Hotel Property could be affected by the SC Hyatt Agreement, the Debtor-in-Possession's Plan and Conditional Modification do not provide for or commit to such a sale or refinancing.

**21.** A proof of claim had been filed by Beaufort County for taxes, however, that tax bill was paid in the normal course of business by Hyatt pursuant to the Agreement and Lease.

**22.** Dunes has acknowledged during this case, that it had equity in the Hotel Property of $5 million over and above Aetna's secured claim

and that continuing income pursuant to the SC Hyatt Agreement is more than adequate to fund all adequate protection payments under the agreed Adequate Protection Order entered January 24, 1995 and present operational expenses. In fact, preservation of Dunes' equity in the Hotel Property was in part the basis of the Court's finding that reorganization was not objectively futile. (See 5/31/95 Order, at p. 15.)

**23.** Even if this Court accepted for purposes of the Hyatt Motion the existence of other creditors and claims, there still appears more than enough equity in the Hotel Property and through its

without considering the commitment by GEPT, as provided for in the only Plan and Conditional Modification submitted by the Debtor-in-Possession and now pending confirmation.

Furthermore, Dunes has not met its burden of responding to the Hyatt Motion and demonstrating that any benefit, direct or indirect, would accrue to the estate or any creditor, beyond merely itself as Debtor, as a result of avoiding the SC Hyatt Agreement.[24] Even under the rulings of *TWA* and *Funding Systems,* the avoidance of the SC Hyatt Agreement would not improve the Debtor-in-Possession's prospect for reorganization or the likelihood of satisfying creditor obligations. Therefore, Dunes has no standing to pursue avoidance pursuant to § 550. *See Wellman,* 933 F.2d at 218.

### 3. Assignment

Hyatt further asserts that Dunes lacks standing because the Aetna Assignment is an "absolute assignment" and that upon the default on the Aetna loan, the SC Hyatt Agreement is no longer property of the Dunes estate. Based upon this Court's prior ruling that Dunes is not entitled to avoid the SC Hyatt Agreement pursuant to § 550, it is unnecessary for this Court to rule on this issue at this time.

### C. *Dunes' Second Claim—Rejection of the Executory Agreement*

▋ In the Second Claim for Relief, and as an alternative to the avoidance claim stated in the First Claim for Relief, Dunes requests a declaratory judgment that the true nature of the SC Hyatt Agreement is that of an executory management contract and not a real property lease which Dunes is entitled to reject (if not otherwise already avoided, terminated, or terminable) pursuant to § 365.[25] There is no dispute between the parties that the SC Hyatt Agreement is an executory contract.

The importance of the distinction argued by these parties is that if the SC Hyatt Agreement is a real property lease, then upon rejection, the lessee Hyatt may be able to retain possession pursuant to § 365(h), a protection that is not available in the event of a rejection of any other type of executory contract such as a management agreement. However, prior to a determination of the nature of the SC Hyatt Agreement, Hyatt has raised the issue that Dunes lacks the requisite standing to utilize § 365, regardless of the specific nature of the executory contract.

Section 365(a) provides that "[e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor." (emphasis added) The standard for approving such an assumption or rejection has been determined in this district by the Fourth Circuit's *Lubrizol* decision:

> ... whether rejection of the executory contract would be advantageous to the bankrupt. *See Borman's, Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187, 189 (6th Cir.1983). Courts addressing that question must start with the proposition that the bankrupt's decision upon it is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors. *See Bildisco,* 465 U.S. at 523, 104 S.Ct. at 1195.

> Transposed to the bankruptcy context, the rule as applied to a bankrupt's decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion ...

---

operations to satisfy all claims against the estate and with a substantial remaining equity.

**24.** The Disclosure Statement filed by Dunes suggests that the Hotel will be worth more *to Dunes* if the Agreement and Lease is avoided, *i.e.,* $63 million instead of $52.5 million.

**25.** Alternatively, the Debtor-in-Possession asserted in the First Claim that the SC Hyatt Agreement was a lease.

... (w)hether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment but only on bad faith, or whim or caprice. *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046, 1047 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1985).

It is clear from the language used by the Fourth Circuit that the *Lubrizol* standard is very lenient; that is, the Court should defer to a debtor's business judgment as a court ordinarily would in reviewing decisions made by the corporate directors of a non-bankrupt entity.

The relevant question raised by Hyatt is whether pursuant to the *Lubrizol* standard, this Court must approve the rejection decision by the Debtor if it only benefits this Debtor and not its estate or its creditors.

While the *Lubrizol* Court states that the rejection must be "advantageous to the bankrupt", the Courts that have interpreted this opinion have regularly interpreted the standard to mean that the rejection must *benefit the estate.* ·

Of significant importance is the Fourth Circuit's recent unpublished opinion in *Susanna C. Lawson, etc., et al. v. Frank G. Lawson (In re Lawson),* 14 F.3d 595 (4th Cir.1993) (unpublished) [26] in which the Fourth Circuit held that "[t]o determine whether a contract may be rejected under § 365 a court's proper inquiry is first to determine whether the contract is executory and if so, whether its rejection would be *advantageous to the estate,* citing *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers,* 756 F.2d 1043, 1045 (4th Cir.1985)." (emphasis added). The fact that the *Lawson* decision found that the proper test was whether the rejection would be advantageous to the estate and looked to *Lubrizol* for this standard, does indeed provide helpful guidance to this Court.

Other Courts within the Fourth Circuit have similarly found that the proper test

under *Lubrizol* is whether the benefit of rejection is to the estate rather than the individual debtor. *See In re Lawson,* 146 B.R. 663 (Bankr.E.D.Va.1992). In the United States District Court for the District of South Carolina's decision in *Host Management, Inc. v. Palace Homeowners Association, Inc. (In re Palace Homeowner's Association, Inc.),* C.A. No. 4:91–3132–21, 1992 WL 738797 (D.S.C. 7/14/92), the Court in citing *In re Sun City Inv., Inc.,* 89 B.R. at 248–49 held:

> Ordinarily, the decision to assume or reject an executory contract is left entirely to the debtor. Upon proper motion, the Court should give perfunctory approval of the decision subject only to review under the business judgment rule. This test simply requires a showing by the Trustee or debtor-in-possession that rejection of the contract will likely *benefit the estate.* (emphasis added)

*In re Palace Homeowner's Association, Inc.,* slip op. at 11.

Similarly, the Bankruptcy Court for the Eastern District of North Carolina has held that "[o]nce a contract is determined to be executory, rejection is proper if it would be advantageous to the debtor's estate". *In re Hardie,* 100 B.R. 284, 287 (Bankr.E.D.N.C. 1989).

Numerous courts in other districts have also held that to utilize § 365, there must be a showing that the rejection will benefit the estate or creditors, but certainly more than merely benefiting the debtor itself or its equity holders. *See, In re Chestnut Ridge Plaza Associates, L.P.,* 156 B.R. 477, 485 (Bankr.W.D.Pa.1993) (court found that the debtor was entitled to exercise its business judgment regarding the assumption or rejection of its leases; however, such decisions must be in the best interest of the estate); *Matter of Federated Dept. Stores, Inc.,* 131 B.R. 808 (S.D.Ohio 1991) (issue is whether rejection is of any benefit to the debtor's creditors); *In re W. & L. Associates, Inc.,* 71 B.R. 962 (Bankr.E.D.Pa.1987) (business judgment test merely requires a showing by a

---

**26.** Although unpublished Fourth Circuit opinions are not binding precedent (I.O.P. 36.5 and 36.6), they may supply "helpful guidance". *In re Serra*

*Builders, Inc.,* 970 F.2d 1309, 1311 (4th Cir. 1992).

trustee or debtor-in-possession that rejection of the contract will likely benefit the estate); *In re Meehan*, 59 B.R. 380 (E.D.N.Y.1986) (if in the judgment of the bankruptcy court, the estate is solvent in the sense that a 100% payout will occur in the event of a liquidation, it is within the discretion of the court to decline to authorize rejection of the contract on grounds of no benefit accruing to creditors from the rejection); *In re Waldron*, 785 F.2d 936 (11th Cir.1986) (the debtors were not financially stressed and had no real need to the bankruptcy process. The Court found that Congress could not have intended that a debt free, financially secure debtor be permitted to engage the bankruptcy process solely to avoid an enforceable contract); *In re Monarch Tool & Mfg. Co.*, 114 B.R. 134 (Bankr.S.D.Ohio 1990) (rejection was unlikely to benefit general creditors or save the debtor); *In re Patterson*, 119 B.R. 59 (E.D.Pa. 1990) (bankruptcy court is entitled to consider the benefit to the estate in general and if rejection of the agreement in this case will allow the debtor to resell it at a higher price *and* thus increase the amount of money to be distributed among creditors, it is hard to see how that rejection can fail to benefit the estate); *In re G Survivor Corp.*, 171 B.R. 755 (Bankr.S.D.N.Y.1994) (in deciding whether the debtor has employed reasonable business discretion in deciding to reject an executory contract, the bankruptcy court for the most part needs to determine only that rejection will likely benefit the estate).

In *In re Kong*, 162 B.R. 86 (Bankr. E.D.N.Y.1993), Judge Duberstein, after citing *Lubrizol* for its expression of the business judgment standard to be applied when a court considers approval of a debtor-in-possession's decision to reject, stated:

> The business judgment standard, as discussed above, requires only a demonstration that rejection of the executory contract or unexpressed lease will benefit the estate. *In re Stable Mews Assocs., Inc.*, 41 B.R. 594, 596 (Bankr.S.D.N.Y.1984) (citing *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979)) ... Central to this showing "is the extent to which a rejection will benefit the general unsecured creditors of the estate."

*In re Kong*, at 96.

In declining to approve the rejection Judge Duberstein held:

In the instant case, the Debtors have not presented convincing evidence to this Court that rejecting [the Lease] will benefit the Debtors' estate ... they utterly fail to address much less demonstrate to this Court how the estate would be benefitted through the rejection of [the Lease] or further, how such rejection, if allowed, would relieve the estate any burdens ... Thus, there is no credible justification for a finding that 'there is a reasonable likelihood that general creditors will derive a substantial or significant benefit from the proposed lease rejection'.

*In re Kong*, at 96.

In 1982, the Bankruptcy Appellate Panel for the Ninth Circuit in a fact analysis similar to the one before this Court similarly held that the primary issue is whether the rejection would benefit the general unsecured creditors.

> If without regard to rejection of the contract, the estate is solvent and the unsecured creditors would receive 100 percent of their claims, rejection would then accomplish nothing for the general unsecured creditors. We do not doubt that if in the judgment of the bankruptcy court, an estate is solvent in the sense that a 100 percent payout will occur in the event of liquidation, that it is within the discretion of the court to decline to authorize rejection of a contract on the grounds that no benefit would accrue to the creditors from the rejection. In such circumstances, rejection might only impose unwarranted administrative expenses or delay. However it is not true that solvent debtors may petition for bankruptcy and then obtain a windfall by rejecting their executory contracts. Such a view ignores the fact that in the event of liquidation the party whose contract is rejected must have his claim satisfied before the debtor may obtain recovery. *See* 11 U.S.C. § 726. In the case of reorganization, the "best interests of the creditors" test gives the creditor equal advantage. *See* 11 U.S.C. §§ 1123–24, 1129. The debtors thus cannot become the primary beneficiaries of rejection directly.

*In re Chi–Feng Huang,* Bkrtcy.App., 23 B.R. 798 (1982).

■ While *Lubrizol* sets a lenient standard for a court's approval of a debtor's decision to assume or reject, it did not dispense with the preliminary determination to be made by the Court *before* approving it; that is, that such an action will benefit the estate. To read *Lubrizol* as giving this Court little or no prerogative to approve or disapprove the Debtor's rejection would give no meaning to the express language requiring court approval in § 365(a). The Court must view the Debtor-in-Possession's decision to reject in the context of its purpose and effects on the reorganization process allowed by the Bankruptcy Code. Therefore, in order to utilize the power to reject an executory contract pursuant to § 365 in this case, Dunes must demonstrate that such a rejection will benefit the estate; that is, be of benefit to more than merely the Debtor itself. Under this rule, the Court returns to the analysis of "benefit of estate" set forth in *Wellman* as discussed earlier. While clearly the use of avoidance powers and the use of § 365 lease assumption or rejection provisions and the express language of these statutes are different, for the purpose of determining standing to utilize § 365, the initial and basic determination is *similar* to, and in this Court's view, *governed by* the reasoning of *Wellman,* which holds that where only the debtor will benefit from its use, a debtor-in-possession does not having standing to bring the action. *Wellman,* 933 F.2d at 218.

In regards to the § 365 rejection in the within adversary proceeding, there is clearly no benefit to Hyatt. Throughout this Chapter 11, Hyatt has vehemently denied a benefit to the estate from any avoidance or rejection of its lease. If the lease is rejected, Hyatt's possessory claim would be replaced by an alleged significant monetary claim for rejection damages. In the event the SC Hyatt Agreement is determined to be a real estate lease, even upon rejection, Hyatt has previously indicated its election to remain in possession pursuant to § 365(h). Likewise,

Hyatt's unsecured claim, if allowed, can certainly be paid from funds generated by the operation or value of the Hotel Property. Therefore, the payment of Hyatt's present claim is not dependent upon rejection.

Additionally, there is no benefit to Aetna. Aetna is a fully secured creditor seeking payment in full or its rights to foreclose. Pre-petition, as a nonrecourse creditor, Aetna's only remedy is against its collateral; the Hotel Property and revenues thereof. Absent the § 362 stay, there is no doubt that Aetna's present claim would be satisfied in full from the Hotel Property even without resort to the GEPT funding of payments or the GEPT guaranty proposed in the Debtor's Plan and Conditional Modification and the Commitment. Furthermore, the Debtor's Plan extends the Aetna debt over a new five (5) year period with a balloon payment of the balance at the end of the five (5) years or offers a discounted cash payment. The Plan does not seriously anticipate nor does it provide for the sale of the Hotel Property or refinancing of the Aetna debt by any party other than GEPT. The Plan, under the first option, provides that GEPT will provide the funds necessary to partially pay down the Aetna claim and will guaranty all payments during the extended period. Pursuant to the second option and the Conditional Modification, GEPT will provide the funds necessary to pay Aetna in full. Through the Plan, Conditional Modification and GEPT commitment on which this Debtor relies for its reorganization, GEPT becomes ultimately responsible for the full debt. The payment in full of Aetna's claim is not dependent upon the rejection of the SC Hyatt Agreement.

Additionally, there is no doubt that the Wolf–Block claim could have been or could be easily paid from either the Hotel's operational revenues or the equity above Aetna's claim or by GEPT. As stated previously within, it is not equitable or allowable as a matter of good faith for Dunes to create or preserve this claim in order to establish a "benefit to the estate" under the requirements of § 365.[27]

---

27. This analysis is the same as that made under §§ 544 and 550 and therefore reference should

also be made to pages 985 through 86 hereof.

It is resoundingly clear to the Court that even without consideration of potentially large rejection damages (which arguably would have a harmful effect on the estate), that the sole party that would benefit from the rejection of the SC Hyatt Agreement would be the Debtor itself (or its equity security holders) and not the estate as required by § 365.[28]

Similar to the ruling on the First Claim, this Court shall not approve the rejection of an executory contract which will not benefit the estate, but merely benefit the Debtor.[29]

After full consideration of all matters presented by Dunes, this Court sees no justification which warrants the invocation of the Bankruptcy Code's powers to reject an already assigned executory contract solely for the benefit of the Debtor or its equity holders. Consequently the Court denies the request to reject the subject executory contract and finds it unnecessary to determine specifically whether the contract is a real estate lease or management agreement.

### D. *Dunes Third Claim—Turnover*

■ Dunes seeks in its Third Claim to have this Court compel Hyatt to turn over to Dunes, as the Debtor-in-Possession, the Hotel Property and all records related to the operation of the Hotel Property. Dunes acknowledges that its attempt to exercise § 542 is dependent upon this Court's making an adjudication that Dunes has a right to possession of the Hotel Property pursuant to either its First or Second Claim. In light of the Court's prior findings resulting in a dismissal of the First and Second Claims, the Third Claim must also fail and be dismissed without prejudice at this time.

### E. *Arbitration*

■ As a part of its Second Claim, Dunes alternatively alleges breach of contract by Hyatt as grounds to allow termination of the lease. In response, Hyatt has asked the Court to stay any further proceedings on the Complaint and to defer part or all of the Second Claim for Relief to a non-bankruptcy arbitrator for proceedings pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, pursuant to an arbitration clause in section 14 of the initial 1973 Agreement and Lease document.

Section 14 of the Agreement and Lease provides:

> Except as otherwise herein provided, if any controversy should arise between the parties in the performance, interpretation or application of this Agreement, either party may serve upon the other a written notice stating that such party desires to have such controversy reviewed by a board of three (3) arbitrators and naming the person whom such party has designated to act as an arbitrator. Within fifteen (15) days after receipt of such notice, the other party shall designate a person to act as arbitrator and shall notify the party requesting arbitration of such designation and the name of the person so designated. The two (2) arbitrators designated as aforesaid shall promptly select a third arbitrator, then either arbitrator, on five (5) days' notice in writing to the other, or both arbitrators, shall apply to the American Arbitration Association to designate and appoint such third arbitrator. If the party upon whom such written request for arbitration is served shall fail to designate its arbitrator within fifteen (15) days after receipt of such notice, then the arbitrator designated by the party requesting arbitration shall act as the sole arbitrator and shall be deemed to be the single, mutually approved arbitrator to resolve such controversy. The decision and award of a majority of the arbitrators or of such sole arbitrator, shall be binding upon both Owner [Dunes] and Hyatt and shall be enforceable in any court of competent jurisdiction.

---

28. While this Court had recognized in an earlier Order that it is not bad faith under § 1112 for a debtor to file bankruptcy to preserve or defend its equity in the Hotel Property, that is very different indeed from using §§ 544 and 550 or § 365 to affirmatively avoid an otherwise binding contract solely in order to create additional equity or value for the sole benefit of the Debtor, its general partners or GEPT.

29. This Court also recognizes that Dunes has other remedies to address its allegations of breach, wrongdoing or improper management by Hyatt.

Such decision and award may allocate the costs of such arbitration to one of the parties or disproportionately between the parties.

Section 2 of the Federal Arbitration Act provides in full as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The United States Supreme Court and the South Carolina Court of Appeals have held that the Federal Arbitration Act declares a liberal policy favoring arbitration. *Circle S. Enterprises, Inc. v. Stanley Smith & Sons,* 288 S.C. 428, 430, 343 S.E.2d 45, 46 (Ct.App. 1986) citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

For purposes of applying the Federal Arbitration Act, interstate commerce must be broadly construed to promote arbitration. *Godwin v. Stanley Smith & Sons,* 300 S.C. 90, 386 S.E.2d 464, 465–66 (Ct.App. 1989). A transaction may be found to involve interstate commerce, even where such a connection was not anticipated, based on, *inter alia,* the multi-state nature of the parties. *Allied–Bruce Terminix Cos. v. Dobson,* —— U.S. ——, ——, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995).

Even though the signatory parties to the SC Hyatt Agreement may formally be South Carolina companies, they were expressly formed by their out-of-state parent companies which operate in the hotel and real estate investment businesses on a national and international level for the sole purpose of this transaction relating to the Hotel Property. Additionally, the subject property is a nationally recognized destination resort drawing guests from across the United States. In this instance, the Court has no hesitation in finding that the subject SC Hyatt Agreement contains the necessary nexus to interstate commerce to enforce the arbitration agreement reached by these parties pursuant to the FAA.

Dunes relies on this Court's decision in *In re East Bay Realty Corp.,* slip. op. No. 94–70187 (Bankr.D.S.C. 6/3/94) (Bishop, J.) for the proposition that arbitration provisions are not enforceable or appropriate in relation to causes of action that solely exist or are created under the Bankruptcy Code.

There is no dispute that the primary aspects of the Debtor's First, Second and Third Claims for Relief are core proceedings pursuant to 28 U.S.C. § 157 and causes of action that solely exist due to the provisions of the Bankruptcy Code. The First Claim for Relief requests avoidance, pursuant to § 544(a), of Hyatt's claim of a leasehold interest in the Hotel Property under the SC Hyatt Agreement. The Debtor-in-Possession's right under this cause of action is a Bankruptcy Code created core proceeding. *See In re East Bay Realty Corp.,* slip op. No. 94–70187 at *5–6 (Bankr.D.S.C. 6/3/94) (Bishop J.); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1155 (3d Cir. 1989). The Third Claim for Relief requests a turnover of the Hotel Property and an accounting pursuant to § 542. This claim also is a Bankruptcy Code created core proceeding. *See* 28 U.S.C. § 157(b)(2)(E).

The Second Claim for Relief also presents a "core" proceeding. The Second Claim for Relief is based upon § 365 and requests the Court to determine that the SC Hyatt Agreement is an executory management contract which Dunes can reject under § 365. Actions seeking determinations under § 365, including the assumptions or rejections of contracts, are inherently Bankruptcy Code created core proceedings. *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1048 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *In re Nexus Communications, Inc.,* 55 B.R. 596, 598 (Bankr.E.D.N.C.1985) (actions to assume or reject executory contracts under § 365 are

"core" proceedings); *In re Texaco, Inc.*, 77 B.R. 433, 437 (Bankr.S.D.N.Y.1987) (same).

However, in citing the holding of the case of *Hays and Co. v. Merrill Lynch* 885 F.2d 1149 (3rd Cir.1989), in the *East Bay* decision this Court stated:

> The trustee [debtor-in-possession] was so bound [by an arbitration agreement] only to those causes of action in the proceeding that did not deal with the trustee's avoiding power created by the Bankruptcy Code. As to any claims "inherited" from the debtor, the trustee [or debtor-in-possession] was bound by documents signed by the debtor.

*East Bay*, slip op. at p. 5. Since this Court has effectively dismissed all three Bankruptcy Code claims in this action, there is no reason under the ruling of *East Bay* to refuse arbitration if the agreement to arbitrate is otherwise enforceable.

The parties to the initial Agreement and Lease undoubtably contemplated and expressly contracted for arbitration as a means of resolving allegations of breach. By these pleadings, Hyatt has asserted that option for arbitration. The parties to a contract should be given the benefit of the bargain which they negotiated. The arbitration clause in Section 14 of the initial Agreement and Lease is clear and conspicuous and is the written embodiment of the intent of the parties.

In the case of *In re Lawrence W. Thompson*, slip op. No. 89–2767–18 (D.S.C. 2/28/91) (Norton J.), the District Court recognized that a bankruptcy court may have the discretion to refuse to compel arbitration even if an arbitration clause may be technically enforceable. The Court recited the following factors to consider in determining whether otherwise enforceable arbitration should be compelled in a bankruptcy proceeding:

A. Whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration process;

B. Whether or not special expertise is necessary in deciding the issue;

C. The impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause; and

D. Whether arbitration threatens the assets of the estate.

*Thompson*, slip op. at \*2 (citing *In re Chas. P. Young Co.*, 111 B.R. 410, 417 (Bankr. S.D.N.Y.1990)).

As this Court has dismissed the First and Third Claims for Relief and the core matters in the Second Claim for Relief, the sole remaining issue raised by Dunes is whether the lease was breached and, if so, the proper amount of damages. No special bankruptcy law expertise appears needed to determine these contract issues. While this Court attempts to labor quickly in such matters and seeks not to defer work that may affect a potential reorganization, when consideration is given to the extent of the discovery process which will likely be undertaken by the parties to address the breach issue, it is unlikely that this Court could more expediently decide such an issue than an arbitrator. Since it is expected that the ongoing expenses of the Hotel Property will be paid from its continued operations during arbitration proceedings, and in as much as the Plan could provide for the arbitration process and confirmation need not be delayed pending a final decision of an arbitrator, there is no negative impact on creditors occasioned by arbitration. As it would appear to be in the best interest of the parties, in the interest of judicial economy, and given the fact that there is no threat of loss to the estate because of the remaining effect of the automatic stay provisions of § 362, it would appear to the Court that the issue of the breach of the lease and damages from such a breach are arbitrable and shall be arbitrated in accordance with Section 14 of the initial Agreement and Lease.

Therefore, the issues regarding breach of contract raised in the Second Claim for Relief are dismissed without prejudice for purposes of arbitration according to the agreement of the parties. The Debtor-in-Possession (or arbitration panel if the parties so elect) shall prepare and file a quarterly report with this Court on the progress and results of the arbitration process,

including a timetable for final decision.[30] The final decision of the arbitration panel shall be submitted to the Court for consideration. Neither party may seek enforcement of the arbitration decision as it would effect the Debtor or property of the estate without application to this Court for relief from the automatic stay.

## CONCLUSION

Pursuant to all of the foregoing Findings of Fact and Conclusions of Law, the Court hereby grants the Motion of SC Hyatt Corporation and Hyatt Corporation to Dismiss the Complaint of Plaintiff Dunes Hotel Associates, or, in the Alternative, to Stay the Second Claim and Compel Its Arbitration and denies Dunes' Motion for Partial Summary Judgment. The issue in the Second Claim for Relief of whether the SC Hyatt Agreement has been terminated or is terminable due to breach shall be decided in arbitration in accordance with the Findings of Fact and Conclusions of Law within.

**AND IT IS SO ORDERED.**

---

30. These reports should begin with the fourth quarter of 1995 on January 15, 1996 and contin-ue thereafter until further Order of this Court.